MARSHALL, J.
Damages for personal injuries.
The petition alleges that the defendant company is and at the times therein stated was a railroad company; that on the 23d of December, 1893, the defendants, Rein-hart, McCook and Wilson, were appointed receivers of said railroad company by the Hnited States Circuit Court for the district of Kansas; that at the city of Monett “the company had a roundhouse, turntable, switch yards and coal chutes where engines are cleaned, repaired, watered, coaled and made ready to be used by defendant’s agents, servants and employees; that plaintiff was, on the 20th day of October, 1893, and prior thereto, an employee and in the service of the defendant railway company as locomotive fireman on a passenger engine numbered fifty-six, on said railroad running between Monett, Missouri, and Neodesha, Kansas; that on the said 20th day of October, 1893, said engine numbered 56 was taken out of defendant’s roundhouse by its employees at the usual time preparatory to going out on its run and placed on the coal chute track in the switch yard at the usual and customary place for putting an engine that is shortly to go out on its run, and that *400 shortly thereafter plaintiff took charge of said engine as it was his duty to do while it was standing on said track as aforesaid, and immediately began performing the duties required of him as such fireman in and about getting said engine ready to take out passenger train numbered one, going west, and that while plaintiff in the discharge of his said duties was examining the ash-pan on said engine to see if it had been properly cleaned and was stooping over in front of the main drive wheel of said engine in the usual and customary and most convenient position for making such 'examination, one Grant Sheldon, who was in the employ and service of said defendant railway company as an engine hostler and who was an ignorant, incompetent, reckless and unskillful servant, all of which the said defendant railway company well knew, or by the exercise of ordinary care and diligence might have known, got upon said engine with the knowledge and permission of defendant and in the discharge of the usual and customary work and duty of an engine hostler, recklessly, carelessly and negligently, and without ringing the bell, sounding the whistle or giving any other warning, quickly and suddenly started said engine forward and run the same against the plaintiff, thereby throwing him down with his left hand upon the track rail in front of one of the drive wheels of said engine, the said wheel passing over said hand, mashing and mangling his hand, causing plaintiff great pain and suffering and causing him to lose a great deal of time, and rendering it necessary to have his hand amputated above the wrist joint, to his damage in the sum of twenty-five thousand dollars; that the defendant railway company negligently and carelessly employed and retained in their employ and .required and permitted to work about and handle the engine aforesaid. as hostler, the said Grant Sheldon, well knowing, or by the exercise of reasonable care might have known, that he was ignorant, reckless, unskillful and incompetent to perform the duties of such hostler and to handle *401 said engine, and that by reason of the carelessness and negligence of the said defendant railway company in employing and retaining in their employ and permitting to handle said engine the said Grant Sheldon, and by reason of the ignorance, recklessness, unskillfelness and incompetency of the said Grant Sheldon the plaintiff was recklessly run upon by said engine and thrown down and injured and damaged as aforesaid.”
The second count of the petition is the same as the first except that after alleging the character of the company and - that it had the roundhouse, turntable, etc., at Monett, it is further averred, “and that defendants, J. W. Reinhart, John J. McCook and Joseph C. Wilson are the duly appointed and qualified receivers of said railroad as aforesaid, in possession thereof, and operating same-as aforesaid,” and except further that it is charged that the engine was in a ’defective and dangerous condition.
The answer of the company admitted the appointment of the receivers, denied the allegations of the petition and pleaded contributory negligence on the part of the plaintiff.
The receivers adopted the answer of the company, and then pleaded that no permission to sue them had been applied for or granted by the "United States Circuit Court for the Eastern District of Missouri, or any court having jurisdiction of their receivership'.
The facts developed on the trial were substantially that about 6:40 p. m. on the 20th of October, 1893, the plaintiff, while in the employ of the company as a locomotive fireman went to his engine, which was standing on what is called the “coal chute track,” at Monett, Mo., to prepare to go out on his run; he lit the lamps on the engine, and finding that the engine did not have enough coal, he left the engine and went to the roundhouse, which was forty or fifty feet distant, and asked for more coal. Then he returned to the engine, opened the valve that lets oil into the lubricator, opened the cylinder *402 cocks, and then stooped down, within four or five feet of the cylinder cocks, with his hands on his knees, and with his head and shoulders under the main rod which connects the drive-wheels of the engine and which communicates the power to the wheels, to examine the “ash-pan” under the engine. While he was in the position described the engine started forward, no bell was rung or whistle sounded, the main rod struck him on the head and he lost his balance, and to save himself from falling he threw out his left hand upon the track rail, and one of the drive-wheels ran over it, injuring it so that amputation became necessary. ■ After his hand was run over, he raised up and as the gangway of the engine passed him, he saw a man getting off of the engine on the opposite side, and called to him for assistance, but the man paid no attention to him. He says that he knew the man’s face, having seen him around the roundhouse, but did not then know his name; that the man was Grant Sheldon. The track on which the engine was standing had a slight grade towards the west, and the engine was a medium quick starter, that is, if “everything was tight” with the lubricator turned and the cylinder cocks open the engine would start without any steam being turned on, when on a grade of this character. The plaintiff testified that if the steam is turned on it would necessarily escape from the cylinder-cocks and that no steam escaped from this engine. Grant Sheldon was employed as a wiper or fire-puller in the roundhouse and prior to the accident had never been employed as a hostler. The employees at the roundhouse rank were, first, foreman, who in this case was J. R. Randall; second, head hostler, who was Peter Stringer; third, second hostler; fourth, third hostler; and fifth, wipers or fire-pullers, whose duties are to perform manual labor cleaning engines, and who are expressly prohibited by the rules of the company from moving an engine either in or outside of the roundhouse, except in the immediate presence of a hostler. Sheldon, *403 although uot a hostler, had, before the accident, moved an engine in the yards, without the presence of a hostler.
As to Sheldon’s competency, the testimony is as follows: Charles Andrews said he had heard complaints among the boys about the way he handled engines, and that the boys were afraid to haul fire under him; that he had complained to Stringer about him, but could not say whether it was before the accident to the plaintiff.
David Loftin testified that he had heard the fire-pullers complain in the presence of Stringer that Sheldon was not competent to handle an engine, but could not say that this was before the accident.
James H. Coyle testified that one night Sheldon backed .an engine into another engine and broke the brake beam out of it and knocked the fellow over that was underneath it; that this occurred a week or two before, the accident to the plaintiff; that he complained to Stringer about Sheldon, because he would stop an engine and then the engine would start up and roll away; that he heard Charley Stringer complain to Peter Stringer about Sheldon, and Peter, told him to block the engine good before he went under it, and told Coyle to do likewise; that he could not say exactly whether this was before or after the plaintiff got hurt.
The plaintiff’s counsel asked the witness Charles Andrews, the following questions:
“Q. What was Mr. Stringer’s habits there in regard to being temperate or intemperate when at Avork?” The defendant objected, the court overruled the objection, and the defendant duly excepted. The witness answered: “A. I have seen him drinking- — -what I would call somewhat intoxicated.”
Again, the Avitness David Loftin, was asked: “Q. You may tell how Mr. Stringer was regarded there as to being a safe and competent man to handle an engine prior to the time of this injury?” The defendant again objected, the court *404 overruled the objection, the defendant saved its exception, and the witness answered: “There was a good deal of complaint against him.”
The testimony shows that Randall the foreman alone had power to employ and discharge men, and that the head hostler had no such power, and that in case anything went 'wrong Stringer had no power to act, but had to send for Randall who was al'one authorized to act for the company at the roundhouse.
Grant Sheldon testified that prior to the accident he was a wiper and that he never had moved an engine as he knew the rules of the company forbade his doing so; that when the plaintiff called for coal he was fifteen or twenty feet outside of the roundhouse, and shortly afterwards he saw the engine start west towards the coal chute, that he supposed there was a hostler on the engine and he ran to help get the coal and when he stepped on the step he saw there was nobody in the cab'; that he heard somebody halloo and he got upon the engine and stopped it; that he did not start the engine and was not on it when plaintiff was hurt.
Peter Stringer, the head hostler, testified that Sheldon was a wiper or fire-puller, and that the rules of the company positively prohibited- a wiper or fire-puller to move an engine under any circumstances, and that he-never heard of Sheldon moving an engine until after plaintiff was injured, and that he, Stringer, had no power to employ or discharge men, but was simply the head hostler at night and got his orders from Randall.
I. E. Randall testified that he was foreman, and alone had power to employ and discharge men; that Sheldon was employed as a wiper and was prohibited by the rules of the company to move an engine under any circumstances.
At the close of the plaintiff’s case and again at the close of the whole case the defendants separately demurred to the evidence, the court overruled the demurrer, and defendants excepted.
*405 Defendant asked and the court refused to give tbe following instructions:
“3d. Tbe court instructs tbe •> jury tbat notice to or knowledge by a fellow servant of •plaintiff of tbe incompetency of Grant Sbeldon, is not notice to tbe defendant railway company ; and notice to tbe bead bostler, or crew foreman, of tbe defendant of tbe incompetency of Sbeldon, was not of itself notice to said defendant, unless said bead bostler, or crew foreman, bad power to employ or discharge said Sbeldon.”
“4th. Tbe court instructs tbe jury tbat tbe plaintiff and Grant Sbeldon, under tbe evidence in this case, were at tbe time of tbe injury fellow-servants with each other, and plaintiff can not recover for any negligent act of said Grant Sbeldon, and tbat tbe only ground on which plaintiff can recover is tbat tbe defendant railway company was negligent in employing said Sbeldon, or was negligent in retaining him in its employ, after notice to it tbat be was habitually care- . less and incompetent to perform tbe duties be was employed or directed to perform, or after it might have learned of such alleged incompetency or carelessness by tbe use of reasonable care.”
At tbe instance of tbe plaintiff tbe court gave tbe following instruction:
“Tbe court instructs tbe jury tbat any foreman for tbe ■ master, though not tbe bead foreman, is vice-principal as to a servant, if be has tbe control of tbe work in which tbe servant is engaged, and is tbe person intrusted by tbe master with authority to direct tbe servant bow, when and where to work. You-are therefore instructed tbat if you believe from the evidence, tbat prior to tbe injury of plaintiff, Peter Stringer bad control and direction of tbe men engaged in performing tbe work in and about tbe roundhouse in Monett, Missouri, and was intrusted by tbe defendant with authority to direct tbe said persons so working for said defendant when *406 and where to work, then the knowledge of Peter Stringer would be the knowledge of the defendant.”
There was a verdict for the plaintiff for $2,637, against all the defendants personally, and after due step's the defendants‘appealed to the St. Louis Court of Appeals, which court transferred the case to this court. The trial took place at the December term, 1895, and afterwards at the May term, 1896, on motion of the plaintiff, and notice to defendants, the court amended the judgment, nunc pro tune, so as to provide that the judgment should be entered against the defendant company, and that such judgment be certified to the defendant receivers “to be satisfied out of any fund that may be liable to same.”
I.
This proceeding against the receivers appointed by the circuit court of the United States for the Eastern District of Missouri is without any permission or authority from that court, and hence can not be maintained. The cause of action did not arise or accrue while the receivers were in charge of and conducting the business and therefore the plaintiff does not come within the provisions of the Act of March 3d, 1887, 24 U. S. Stat. at Large, p. 554. The accident complained of occurred on the 20th of October, 1893, and the receivers were not appointed until December 23d, 1893.
Receivers are officers of court to hold and manage property which is in the registry of the court, and persons having any claim to property so situated must submit'their claims to the court that has obtained jurisdiction over the res, and the court will not permit its officers to be sued in any other tribunal without its consent. This is not only a law of comity among courts but is a jurisdictional necessity, for it is manifest that two courts could not, acting separately, successfully manage the property or harmoniously distribute it. *407 [Beach on Ree. (Alderson’s Ed.) secs. 229-240; Kerr on Rec. (2 Ed.) p. 196 et seq.]
The petition does not aver that the consent or permission of the United States circuit court to sue its receivers was asked or obtained before this action was begun, and there is a total lack of any evidence of such steps having been taken. The action can not therefore be maintained, and the judgment against the receivers, or as amended, that the judgment against the company be certified to the receivers, is reversed.
II.
The case made against the defendant company by the pleadings is that it employed Grant Sheldon as a hostler at its roundhouse at Monett, knowing that he was unskillful and incompetent to handle an engine, or that it might have ascertained that fact by the exercise of ordinary care, and that the plaintiff, a locomotive fireman in the defendants’ employ, was injured while in the discharge of his duty, by the carelessness of said Sheldon in starting the engine to which plaintiff was attached as such fireman, without ringing the bell or sounding the whistle. This is the substance of the first count. The second count is the same except that it contains an averment that the engine was in a defective or dangerous condition, but as there is no evidence to support that averment and no instructions were asked by the plaintiff predicating a right to recover upon the defective or dangerous condition of the machinery, the plaintiff must be regarded as having abandoned that count. We will therefore treat the case as resting upon the first count only.
The evidence wholly failed to support the allegation that Sheldon was employed by defendant as a hostler. On the contrary all the evidence shows that he was employed as a wiper or fire-puller, and that the rules of the company positively prohibited a wiper oi fire-puller to move an engine under any circumstances, except in the immediate presence *408 and under the direction of a hostler who was on the engine. The plaintiff produced some evidence that on at least one occasion before this accident Sheldon did move an engine and backed it into another engine, but there is no evidence that the company or any of Sheldon’s superior officers knew of this fact, and on the contrary the head hostler and the foreman both testify that they never knew of Sheldon moving air engine at any time before the accident. The plaintiff’s witnesses Andrews, Loftin and Coyle testify to hearing or making complaints against Sheldon,’and that the fire-pullers were afraid to go under the engine when he was moving it, but none of them would swear that this occurred prior to' the accident to the plaintiff, and when it is remembered that the plaintiff was injured on the 20th of October, 1893, and that the trial, at which this testimony was introduced, took place on the 3d of January, 1896, the inability of the witnesses to locate these “talks” among “the boys” as to whether they were before the accident or afterwards, is easily understood. The witness Coyle also testified to hearing complaints made to Stringer, the head hostler, about Sheldon, but he was unable to state whether this was before or after the accident, he finally saying, “I do not know for certain. It was on or about that time, to the best óf my knowledge, about. It might have been prior to that, and it might have been afterwards, but it was about that time.”
When the evidence is analyzed therefore it amounts to this, that Sheldon was not employed as a hostler, as charged in the petition, but was employed as wiper or fire-puller, and was prohibited by the rules of the company from moving an engine except when a hostler was on the engine directing him; that neither the head hostler nor the foreman had ever heard of Sheldon moving an engine before the accident; that Sheldon did move an engine once before the accident but neither the head hostler nor the foreman ever heard of it; that the fire-pullers and wipers complained about Sheldon, and *409 at least one of them spoke to the head hostler about Sheldon, but it does not appear that this was before the accident; that Peter Stringer was the head hostler and directed the men around the roundhouse as to what work they should do-, but that he had no power to employ or discharge any one, and if anything unusual occurred he had to report to and act under the orders o-f Eandall, who was the foreman and master mechanic and whose office was within a few feet of the roundhouse, and who alone had power to employ or discharge the men.
The case was -put to the jury by the court upon instructions which authorized a recovery by the plaintiff if the defendant employed Sheldon and permitted him to move engines around the roundhouse or yards -at Monett, and if Sheldon was unskillful or incompetent and the defendant knew it or by the exercise o-f reasonable care co-uld have ascertained it, or kept him in its employ after it knew or might have known of his incompeteney, and if Sheldon’s incompeteney or unskillfulness caused the injury to the plaintiff, and that if Peter Stringer, the head hostler, had authority to direct the men in their work around the roundhouse, he was a vice-principal, and his knowledge was the knowledge of the company.
The instructions did not fit the issue, in that they did not require the jury to find that Sheldon was employed as a hostler. They simply required the jury to find that Sheldon was employed by the defendant, without specifying in what capacity, and then to find that the defendant permitted Sheldon to run engines around the roundhouse and yards, and in order to carry knowledge of Sheldon’s acts to the company so as to draw the inference of a permission from the company, the fact that Stringer had the right to direct the men around the roundhouse as to what work they should do was declared by the court to make Stringer a vice-principal, so that his knowledge was the knowledge of the company, but neither this *410 instruction nor any other instruction given to the jury required them to find that even Stringer knew that Sheldon had ever run an engine before the accident or that Stringer had ever permitted Sheldon to do so. And the jury, if so required, could not have so found, for as above pointed out, the evidence shows only one occasion, prior to the accident, when Sheldon ever moved an engine, and there is no evidence whatever that even Stringer ever heard of it, but on the contrary Stringer testified positively that he never had heard of it, and never had given him permission to do so, but that' on the contrary the rules absolutely prohibited him from doing so. .
The case presented therefore does not show that’the company employed Sheldon as a hostler, or that it ever permitted him to run an engine or ever heard of his doing so before the accident, and that the rules prohibited his moving an engine. Sheldon was employed as a wiper or fire-puller and there is no pretense that he was incompetent to do that work. There was therefore no evidence upon which to predicate the instructions given for the plaintiff. The third instruction given for the plaintiff lacked the essential element of requiring the jury to find that Stringer knew of Sheldon’s incompetency to move an engine and that Stringer permitted him to do so. And the jury could not so find, because there was no evidence whatever adduced upon which the jury could have so found, but the evidence was all to the contrary.
The instructions were further erroneous in that while not being consistent with the issues as to Sheldon’s employment as a hostler, and not specifying in what capacity Sheldon was employed, and assuming that there was evidence that defendant permitted him to move engines, and while declaring that because Stringer directed the work of the men around the roundhouse he was a vice-principal, and without requiring the jury to find that Stringer had any knowledge that Sheldon ran engines or that he was incompetent, it was declared that Stringer’s knowledge was the knowledge of the company.
*411 It might be sufficient now to say that if all the knowledge that Stringer is shown by this record to have had, is assumed to have been possessed by the company, it would not malee out a case against the defendant, for it would amount only to this, that Sheldon was employed as a wiper or fire-puller; that he was prohibited by the rules from moving an engine; that he never had moved an engine before the injury to plaintiff, and that he was not ordered or given permission to do so, on that occasion, or given permission to do so at any other time prior to' the accident. This is what the evidence shows was the knowledge of Stringer. It wholly fails to show any knowledge on Stringer’s part, which would impose a liability on the defendant.
In Dysart v. Railroad, 145 Mo. l. c. 88, Williams, J., said: “Plaintiff and the engineer were fellow servants. . . . It was essential to plaintiff’s case to show, not only the incompetency of the engineer, but also, that defendant failed to exercise reasonable care in employing and retaining him in its service. [Roblin v. Railroad, 119 Mo. 476.] ‘There is no dispute as to this proposition of law, namely, that the master must use ordinary care in employing and retaining competent and suitable servants. This is a personal duty devolved upon the master and he is liable for a failure to perform this duty, resulting in an injury to a fellow servant.’ [Williams v. Railroad, 109 Mo. 482.] It is equally well established that the burden is on the plaintiff seeking to recover for injuries caused by the negligence of a fellow servant to show want of proper care on the part of the master in employing or retaining the latter. [Roblin v. Railroad, 119 Mo. 476.] If there was a failure to make this proof, then without reference to any othei questions in the case, the instruction,-which resulted in a nonsuit, was entirely proper.” The case then before the court was much stronger for the plaintiff than the case at bar, for there the employee complained of as incompetent, was employed as an engineer, *412 and it was shown, that on a prior occasion he backed the engine when the signal was to go ahead, and it was further shown that his reputation was bad among the employees of the road with respect to care and caution, but there was m> evidence that the company ever heard of these matters, nor that it was guilty of want of ordinary care in employing or retaining him. So the judgment was affirmed.
The law imposes a duty upon the master to exercise ordinary care in employing competent and suitable persons to transact the master’s business committed to their care, and the degree of care required of the master varies with the nature of the duties to be performed by the servant. The master is required to exercise greater care in the employment of a railroad engineer than in the employment of a brakeman or track hand. [Wood on Master and Servant, (2 Ed.), sec. 418; Bailey on Master’s Liability, p. 54.] So the master must exercise ordinary care in retaining servants in his employ, and if he retains a servant who has proved himself incompetent to the knowledge of the master, the master will be liable. But this is the extent of the master’s duty to a fellow servant; all other risks the servant assumes when he enters the master’s employment. [Wood on Master and Servant (2 Ed.), sec. 416.] If the servant’s reputation is so generally known to be bad that it could have been easily ascertained upon inquiry, the master is liable, for he is negligent in not making the inquiry. [Wood on Master and Servant (2 Ed.), sec.' 421; Bailey on Master’s Liability, p. 48.]
Applying these principles to this case, it appears that as defendant employed Sheldon as wiper or fire-puller, it was not bound to exercise the same degree of care that it would if he had been employed as an engineer or hostler, and that no negligence is shown in employing him as a wiper, for there is no complaint as to his competency in that employment, nor *413 was the injury to the plaintiff caused in any manner by any unsldllfulness in discharging his duty as a wiper.
The plaintiff’s case must rest then upon the alleged knowledge of Stringer. Aside from the defects in the third instruction above noted, and the total absence of any proof that Stringer knew of or consented to Sheldon’s moving an engine, the instruction is erroneous for the further reason that Stringer and the plaintiff were fellow servants,. as were Sheldon and the plaintiff fellow servants. Stringer had no power to hire or discharge any one. Randall was the foreman and master mechanic in charge of the defendant’s roundhouse and all that was done there, and he alone had power to hire or discharge servants, he was the vice-principal of the company, and it is not even pretended that he knew of or permitted Sheldon to run an engine, or ever heard anything about his competency or incompetency to do so. He hired Sheldon as a wiper, and no negligence is imputed to the defendant from that employment.
In Williams v. Railroad, 109 Mo. 475, it was held that the knowledge of the foreman of the roundhouse (here Randall) was the knowledge of the company, because “it was his duty to look after the engine and men and make reports to his superior.”
Bailey on Master’s Liabilities, p. 6.5, lays down the rule that knowledge must be shown to have been possessed by the master or “by one who has authority in the premises, or whose duty it is to convey it to one having §,ueh authority. Knowledge by one not sustaining such relation is not sufficient,” and quoting from Railroad v. Collarn, 73 Ind. 261, he says, “Notice to the master mechanic, whose duty is to employ or discharge the incompetent servant, will be notice to the master.”
Stringer occupied no such relation to the defendant company as would charge it with his knowledge. He was in no sense a vice-principal. He was the head hostler, and as such *414 was not of as much rank or dignity as an engineer. The plaintiff was a fireman and he and the engineer were fellow servants. So he and Stringer were fellow servants, and Stringer’s knowledge was no more the knowledge of the company than that of any other servant. We are not disposed to extend the doctrine of vice-principal any further than was done in the Williams case, supra.
It follows that the third instruction given for the plaintiff jvas erroneous, and that the converse of that instruction embodied in instruction 8d, asked by defendant, should have been given.
Instruction 4th, asked by defendant, should have been given in any aspect of the case. It asserted perfectly correct principles of law, and bore upon the vital points at issue, which were not covered by any other instruction given.
It follows that the judgment of the circuit court must be reversed and the cause remanded for a new trial in conformity herewith. It is so ordered.