Argued May 6, decided May 21, 1912.

## STATTS *v.* TWOHY BROS. CO.

[123 Pac. 909.]

DEATH—ACTIONS—PARTIES PLAINTIFF.

1. Laws 1911, c. 3, §§ 3, 4, provides that if there shall be any loss of life by reason of violations of the act by any owner, or contractor who shall be liable, the widow of the person so killed, his leneal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of action. The statute also abrogates the fellow servant rule, and provides that contributory negligence shall not be a defense. Held, that it did not abrogate Section 380, L. O. L., providing that, when the death of any person, is caused by the wrongful act of another, the personal representative of the former may maintain an action for damages which shall be administered as other personal property of the deceased, and so, where the servant of a railroad contractor was killed by an unexploded blast, his administrator might maintain a cause of action, although he had relatives in a foreign country who might maintain an action under Laws of 1911.

DEATH—ACTION—COMPLAINT.

2. The complaint by the administratrix ·of a servant of a railroad contractor who was killed by an unexploded blast alleged that the deceased was 22 years old, industrious and healthy, and had an expectancy of life in excess of 40 years, which was worth to his estate more than $7,500, for which sum judgment was demanded. *Held,* that the action was brought under Section 380, L. O. L., giving the administrator of one killed by the wrongful act of another a right of action for damages not to exceed $7,500, which amount recovered should be administered as personal property.

MASTER AND SERVANT—INJURY TO SERVANT—INCOMPETENT SERVANTS.

3. The standard of care in selecting an employee who is to control others, or to do work essentially dangerous, is higher than that required

in the selection of ordinary employees, and so it was negligence for a master to select as a powderman to set off blasts which might injure other servants one who was wholly unfamiliar with that sort of work.

TRIAL—QUESTIONS FOR JURY.

4. An issue on which the evidence is conflicting is a question for the jury.

MASTER AND SERVANT—INJURIES—ACTIONS—JURY QUESTIONS.

5. In an action by the administratrix of a deceased servant, *held* that, under the evidence, the questions of the defendant's negligence and the servant's contributory negligence were properly submitted to the jury.

From Gilliam: DAVID R. PARKER, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Arabella Staats, as administratrix of the estate of Mile Radmanovich, deceased, against Twohy Bros. Company, a corporation, to recover damages resulting from the intestate's death, which was caused by an accident while he was in the defendant's employment.

In year 1911 the defendant was engaged in Gilliam County in straightening and widening the track of the Oregon-Washington Railroad & Navigation Company. A successful prosecution of the work demanded in some places the removal of large quantities of rock, to accomplish which holes were made from the surface of basaltic formations by a steel drill down to points in line with the established grade of the roadbed. When the required depth had been reached, about five sticks of dynamite were lowered to the bottom of the hole, and sand was tamped down upon the charge. In one of the cartridges were placed metal caps filled with a powerful explosive, into which were inserted the ends of copper wires. These wires extended to the surface, where they were connected with other like wires that were attached to a battery. In loading a measuring stick was used on which were marked the depth of the hole, the quantity of explosive

used, and the amount of tamping employed. The movement of a lever on the electric apparatus formed a circuit producing a spark in the metal caps, which, exploding, caused the dynamite to be discharged. After such experimental blast, which is called "springing" the holes, the crushed rock at the bottom and the sand used for tamping are removed, and another similar charge placed in the orifice and exploded, which process is repeated until a cavity is formed of sufficient capacity to contain an adequate amount of dynamite and other explosives, which, when ignited, will break down a large and entire section of the rock.

Pete Basarich, employed by the defendant as powderman, assisted by Mile Radmanovich and other Austrians, on July 5, 1911, loaded three holes, each of which had been drilled to a depth of 26 feet. The dynamite composing the several charges, having been tamped with sand, was connected from hole to hole by copper wires, and then united with the wires leading to the battery. Applying the lever of the machine only two of the loads were exploded, the wire in one of the holes having been broken at a point about 12 feet below the surface. After the discharge, the battery was applied to the wire in two of the holes, but, no further explosion occurring, Radmanovich, by direction of Basarich, began churning by hand a steel drill in what afterwards proved to have been the hole containing dynamite. The manipulation of the drill was to loosen at the bottom of the hole the material so it could be removed. The drill passing through the sand struck the dynamite, causing it to explode and injuring Radmanovich, from the effects of which he died.

The complaint sets forth in detail the facts hereinbefore briefly noted, and avers, in effect, that at the time of the accident John Connor was employed as defendant's foreman; that Radmanovich was inexperienced in the

use of explosives, and, in working therewith, relied upon
the defendant and its foreman to engage qualified fellow
servants; that it was incumbent upon defendant to hire
a competent and experienced powderman, but, failing to
do so, it engaged to load and fire the drill holes Basarich,
who was incompetent and unfit to do such work, which
fact was well known to the defendant and its foreman,
but was unknown to Radmanovich, who unnotified thereof
and trusting and believing he would not be exposed to the
dangers of an inexperienced employe in performing that
class of work, continued in such employment. The com-
plaint contains other material averments, and alleges that
Radmanovich was 22 years old, industrious and healthy,
and had an expectancy of life in excess of 40 years, which
was worth to his estate more than $7,500, for which sum
judgment was demanded.

The answer denied the material averments of the com-
plaint, and for a further defense and by way of abate-
ment, which plea may now be joined with an answer to
the merits (Laws Or. 1911, c. 99), alleged that Radman-
ovich left him surviving in Austria a father and a mother,
and, if by reason of his death any liability attached, it
inured to his parents, whereby Mrs. Staats is not a proper
party plaintiff, and the action should abate. Other
defenses were also interposed.

A reply put in issue the allegations of new matter in
the answer, and, the cause having been tried a verdict
was returned for plaintiff in the sum of $1,750, and, judg-
ment having been given thereon, the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of
*Mr. Arthur C. Spencer, Mr. Jay Bowerman* and *Mr. M. D.
Shanks,* with an oral argument by *Mr. Bowerman.*

For respondent there was a brief over the names of
*Mr. Enoch B. Dufur, Mr. G. W. Parman* and *Mr. T. A.
Weinke,* with an oral argument by *Mr. Weinke.*

MR. JUSTICE MOORE delivered the opinion of the court.

1, 2. It is insisted that plaintiff is not the proper party to maintain this action, and, such being the case, an error was committed in denying defendant's motion for a judgment of nonsuit, and in refusing to direct a verdict in its favor. It is argued by defendant's counsel that this action is based on Chapter 3, Laws Oregon, 1911, Section 1 of which prescribes the degree of care required to be exercised by persons interested, or engaged in certain classes of work. Section 2 declares that a person having charge of such work shall be deemed the agent of the employer in all actions to recover damages for an injury to or the death of an employe. Section 3 makes it incumbent upon owners, etc., to see that the requirements of this act are complied with, and upon a conviction for a non-observance, or violation thereof a fine may be imposed.

Section 4 reads as follows:

"If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act by any owner, contractor, or subcontractor, or any person liable under the provisions of this act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of action without any limit as to the amount of damages which may be awarded."

Section 5 announces that the negligence of a fellow servant shall not be a defense where the injury complained of was produced by certain causes. The remaining parts of the act are as follows:

"Section 6. The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of damages.

"Section 7. All acts or parts of acts inconsistent herewith are hereby repealed."

This statute was enacted by a vote of the electors November 8, 1910. At that time Section 380, L. O. L., was in force, to wit:

"When the death of any person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and damages therein shall not exceed $7,500, and the amount recovered, if any, shall be administered as other personal property of the deceased person."

The act first referred to is limited in its application to certain enumerated causes, and it would appear that an action to recover damages for the death of an employe could be maintained only by a relative of the deceased. If no connection survived of the class specified, it is possible that an action could not be maintained to recover the damages sustained by the estate, though the injured person may have died insolvent, in which case his creditors would be remediless, notwithstanding a recovery might be had if a proper party plaintiff existed and could be found. Section 380, L. O. L., limits a recovery in case of death to $7,500, and the only person who can maintain an action, except in case of a minor (Id. § 34), is an executor or administrator. The amount obtained by judgment constitutes an asset of the estate to be disposed of in due course of administration. A remedy is thus given a creditor when the death of his insolvent debtor has been caused by the wrongful act or omission of another. The statute enacted by the voters is not inconsistent with Section 380, L. O. L., which earlier provision was not repealed by an exercise of the initiative power. An examination of the averments of the complaint, when read in connection with the prayer for judgment, leads to the conclusion that the cause of action thus set forth is founded on the section of the Code adverted to, and not upon the statute mentioned. The deceased having attained his majority, Mrs. Staats, as his personal repre-

sentative, is a proper party to prosecute the action to recover the damages sustained by his estate. *Putman* v. *Southern Pacific Co.,* 21 Or. 230 (27 Pac. 1033). No error was committed as alleged.

3. One of the obligations which the law imposes upon a master is to exercise reasonable or ordinary care in selecting employes who will not expose their fellow servants to greater hazards than a prosecution of the department of the work in which they are engaged necessarily entails. Labatt, Master & Servant, § 177; *Thomas* v. *Herrall & Zimmerman,* 18 Or. 546 (23 Pac. 497.) "An employer who negligently or knowingly," says a text-writer, "employs or retains in his service an incompetent servant is liable for injuries to a fellow servant, sustained through the incompetency of the servant so employed and retained, unless the injured servant has assumed the risks incident to such incompetency." 12 Am. & Eng. Ency. Law (2 ed.) 909. To the same effect, see, also, 26 Cyc. 1293. The measure of care demanded of the master in such cases is commensurate with the degree of danger reasonably to be apprehended from the instrumentalities employed in performing the labor required. Labatt, Master & Servant, § 186. As a legitimate deduction from the precept last stated, it necessarily follows that, in selecting an employe whose duty it is to direct and control fellow servants in their performance of work which is essentially dangerous, a master must exercise due or ordinary care in choosing for that purpose a person who is reasonably safe and competent to execute the service required. *Smith* v. *St. Louis & San Francisco R. Co.,* 151 Mo. 391, 408 (52 S. W. 378, 383: 48 L. R. A. 368, 387). In that case Mr. Justice MARSHALL, discussing this subject says:

"The master is required to exercise greater care in the employment of a railroad engineer than in the employment of a brakeman or track hand."

See, also, the exhaustive notes to that case on this important subject. In the case at bar the averments of plaintiff's primary pleading bring the cause within the rule announced, and no error was committed in overruling the demurrer to the complaint.

4, 5. It is insisted that the testimony offered shows that plaintiff's intestate was guilty of such contributory negligence as to preclude a recovery for the damages alleged to have been sustained, and, such being the case, an error was committed in refusing to grant a judgment of nonsuit. Pete Basarich testified that at the time of the accident he had been employed by the defendant about two months, working at first on the grade; that he was thereafter required to labor as powderman to load and fire drill holes, and had been so engaged about 8 days when Radmanovich was hired; that the witness was inexperienced in the use of explosives, and so notified the defendant's foreman, Mr. Connor, to whom he said, "I don't want that job. I like to work with pick and shovel;" that the foreman requested him to perform such service for two or three days, after which he could return to labor on the dump; that Connor showed him how to put five sticks of dynamite in each hole, and directed him that where several holes had been drilled near each other to fire them all at once; that after the witness had worked two or three days he said to Mr. Conner, "I don't know anything about powder," whereupon the foreman replied: "You keep the job. I give you 25 cents more per day. The job is going fine what you are doing"—that the foreman further said: "As soon as the holes are sprung, the fire out, get your drill, go and drill more deeper." In answer to the question: "When the holes that did fire blowed, did they throw sand up at the top and scatter it around the top of the holes?" the witness replied: "These two holes no throwed up at all. Q. Now could you tell whether all the holes had gone off at a firing? A. If

Sig. 20

you spring one, that one can tell, but, if you spring three at a time, you can't tell any different."

Louis Smolich, who was working with Radmanovich, testified that Connor ordered all the holes to be discharged at the same time; that, after the explosion, the measuring stick was placed in each hole, and in the one in which the dynamite was not discharged there were found three feet of sand which was as hard as a rock; that very often after an explosion sand remained in the hole, and, when the drill had passed through such tamping, it would fall into the cavity. From the testimony of this witness it would appear that the only safe manner of determining whether or not an explosion had taken place is by dis-. charging one hole at a time; that the greater force of the explosion of a small quantity of dynamite is usually downward, often leaving the top of the tamping undisturbed, so that a measuring stick would not always reveal the effect of the application of electricity to the charge. Radmanovich, who was inexperienced in the use of such dangerous instrumentalities, could not have ascertained by the measuring stick that the charge was unexploded. Mr. Connor, as defendant's witness, denied that he directed more than one hole to be discharged at a time. The dispute respecting this matter, however, was a question for the jury. The evidence does not show such contributory negligence on the part of Radmanovich as to authorize a judgment of nonsuit in denying the motion for which no error was committed.

A careful examination of the entire testimony convinces us that there was sufficient evidence offered from which the jury might reasonably infer negligence in the selection of Basarich as a powderman, when he was inexperienced in that class of work and incompetent to perform the service, of which fact the defendant had knowledge but of which plaintiff's intestate was ignorant.

No error was committed in refusing to grant a nonsuit, and the judgment is affirmed.        AFFIRMED.