Argued March 9, affirmed April 7, rehearing granted July 7, 1914.
Argued on rehearing July 28, former opinion approved November 10, 1914.

# McCLAUGHERTY *v.* ROGUE RIVER ELECTRIC COMPANY.

### (140 Pac. 64; 144 Pac. 569.)

**Appeal and Error—Harmless Error—Admission of Evidence.**

1.   In an action for the death of an employee of an electrical company, the admission of evidence that the witness would have understood the directions of the defendant's superintendent as meaning that the work was to be done hot, that is, without turning off the current, is not ground for reversal, where such testimony does not materially contradict that of defendant on the same subject.

**Master and Servant—Injuries to Servant—Place to Work—Statutory Provisions.**

2.   Under Employers' Liability Act (Laws 1911, p. 16), providing that, in the transmission and use of electricity of a dangerous voltage, full and complete insulation shall be provided, and dead wires shall not be mingled with live wires, nor strung upon the same support, and the supports bearing live wires shall be designated by a color or other designation which shall be instantly apparent, and live wires shall be strung at such a distance from the poles or supports as to permit repairmen to freely engage in their work without danger of shock, the furnishing of switches at some distance from a point where work is required to be done, by which the current may be turned off entirely, does not exculpate an electrical company from negligence in failing to comply with the specific requirements of the statute.

> [As to what is "accident arising out of and in course of employment" within Employers' Liability Act, see note in Ann. Cas. 1914D, 1284.]

**Electricity—Master and Servant—Care Required.**

3.   Electricity is a dangerous element, and in its use the highest degree of care is required to protect employees and the public.

**Master and Servant — Injuries to Servant — Assumption of Risk — Statutory Provisions.**

4.   The Employers' Liability Act (Laws 1911, p. 16) eliminates the defense of assumption of risk in actions under it.

> [As to assumption of risk under Federal Employers' Liability Act, see note in Ann. Cas. 1915B, 481.]

**Death—Actions for Causing Death—Damages.**

5.   Under employers' liability law (Laws 1911, p. 17), Section 4, providing that, if there shall be any loss of life by reason of violations of the act, the widow of decedent, his lineal heirs or adopted children or the husband, mother or father, as the case may be, shall

have a right of action, without any limit as to the amount of damages which may be awarded, the measure of damages is the value of the life lost, not including compensation for grief or mental anguish of the beneficiary nor punitive damages, and is not confined to the pecuniary loss to the beneficiary; the act contemplating but one action for the injury.

**Death—Trial—Actions for Causing Death—Damages.**

6. In an action, under the employers' liability law (Laws 1911, p. 16), for causing death, the refusal of an instruction that the measure of damages is confined to the pecuniary loss to plaintiff, that is, to such an amount as would equal the value of decedent's services during his minority, less the reasonable cost of his support, together with such support as the father would probably have received from his son after majority, and the jury should consider the probable length of life of the father, and the relations between the father and son, was proper; and an instruction that the jury should consider decedent's age at the time of the injury, his probable expectancy of life, and determine the amount of damages the same as if decedent had lived and could have himself sued, and that the amount could not exceed the damages actually sustained, was sufficient in the absence of a request for more specific instruction on some point within the purview of the statute.

**Death—Actions for Causing Death—Statutory Provisions.**

7. Statutes creating a liability for causing death (Sections 34, 380, L. O. L.; Employers' Liability Act [Laws 1911, p. 16]), while not to be strictly construed, are not to be extended by implication, as they are in derogation of the common law.

**Death—Actions for Causing Death—Right of Action.**

8. The basis for recovery, under the employers' liability law (Laws 1911, p. 16), for causing death is not the dependency of the plaintiff upon the decedent, nor pecuniary loss by plaintiff, though that may be proven as an element of damages, but is the existence of the relation of plaintiff to decedent required by the statute.

[As to actions for causing death, see note in 70 Am. St. Rep. 669.]

### ON REHEARING.

**Death—Action Under Employers' Liability Act—Habits of Plaintiff—Evidence.**

9. In an action under Employers' Liability Act (Act April 22, 1908, c. 149), Section 4, 35 Stat. 66 (U. S. Comp. Stats. 1913, Section 8660), for the death of plaintiff's son, evidence concerning the habits of plaintiff as to the drinking of intoxicating liquors, being incompetent to increase or diminish the damages recoverable, was properly excluded.

**Death—Action Under Employers' Liability Act—Nature and Form—"Survival Action."**

10. An action under Employers' Liability Act, Section 4, for the death of an employee, is akin to a "survival action" by an administrator under Section 380, L. O. L., and serves practically the same purpose; though it obviates the necessity of the appointment of an administrator, the damages recoverable are not limited, and the pro-

ceeds of the judgment go direct to the beneficiary, instead of to decedent's estate.

**Death — Employers' Liability Act — Damages Recoverable — "Actual Loss."**

11. Within Employers' Liability Act, Section 4, authorizing recovery of the actual loss in case of death of an employee, "actual loss" to a father for the death of his son was the net amount which the son would probably have saved from his earnings by his skill and bodily labor in his calling or profession during the residue of his life, had he survived, taking into consideration his age, health, ability, habits of industry, sobriety and mental and physical skill, so far as they affected his capacity for earning money, or rendering services to others, or accumulating property.

From Jackson: FRANK M. CALKINS, Judge.

In Banc.    Statement by MR. JUSTICE BEAN.

This is an action by Joseph P. McClaugherty against the Rogue River Electric Company, a corporation, brought under the Employers' Liability Act, Chapter 3 (Laws 1911, p. 16), to recover $25,000 damages for the death of plaintiff's son, alleged to have been caused by defendant's negligence. The jury returned a verdict for $12,500. The court entered judgment thereon, from which defendant appeals.

James McClaugherty, the deceased, met his death May 27, 1911, from an electric shock. He was at the time in the employ of the defendant, and was of the age of 20 years, 7 months and 10 days. His experience and knowledge in handling electricity had been gained during his employment by the defendant company for a period of between 8 and 9 months. He was told by the superintendent of the defendant to go to the cyanide plant about 1½ miles from Jacksonville, where he would find a 2,300-volt motor which he was required to install for the Clark & Henery Construction Company. On being so directed, he requested the superintendent to give him an assistant; but this request was not complied with. He was informed that he

could get a common laborer to help him raise the poles, and that the Clark & Henery Company would probably furnish a man.  The work required the running of three 2,300-volt wires from the motor to three 2,300-volt wires on a pole in the main line, and there making the connections.  For this it was necessary to put a cross-arm on the pole immediately under the 2,300-volt wires.  This pole carried one 2,300-volt wire on top, two immediately under it, one on either end of a cross-arm, and three 440-volt wires, two on one side of the pole, and one on the other.  Underneath these were two telephone wires of the defendant used in connection with its plant.  The evidence tended to show that the telephone wires, which are regarded by electricians as dead wires, might become charged with electricity in rainy weather by induction from the live wires, which would, of course, complete the circuit, if brought in contact with one of the live wires either directly or through the medium of any body capable of conducting electricity.  None of the wires were insulated, and the evidence of plaintiff tended to show that the distance of the wires from the pole, and from each other, was such that the place where the wires were charged with electricity was an unsafe one in which to perform the work at which the deceased was engaged at the time of the accident; that the defendant had placed cut-out switches or plugs at two points along this line between the power-house and the place of the accident, one of which was in a substation at Jacksonville, a mile and a half from the scene of the injury, and the other on a pole about one-half mile from where the accident occurred.  At this time the employees of defendant were divided into three classes: Groundmen, who were paid 28 cents per hour, linemen, who worked on live wires under direction, 32 cents per hour, and

qualified linemen doing all kinds of work, including that on live wires, without supervision, 35 cents per hour. The men were advanced as their proficiency increased. Immediately prior to the time of the decedent's death he was working on live wires under direction, and receiving 32 cents per hour. When the work in question came up, the superintendent asked McClaugherty if he would like to take the job, and he appeared willing and anxious to do so. He was sent to do the work alone, receiving no particular instructions as to the manner of doing it. Nothing was said as to whether he should do it hot or cut off the electricity from the lines. The bill of exceptions discloses that the evidence of the plaintiff tended to show the location and arrangement of the wires on the poles, the distances between the poles and the wires, and the distances between the several wires, all of which warranted the jury in finding that the place was not a safe one, while the wires were charged with electricity, for James McClaugherty to perform the particular work he was required to do, by reason of the wires being too close to the poles, too close to each other, and not insulated; that he met his death from an electrical shock while performing the work he was sent to do, the shock being received by reason of the fact that the place where he was working was a dangerous and unsafe one in which to do the particular work he was performing, while the wires were charged with electricity, the 440-volt wire being 20 inches from the pole, and the only designation that would make the voltage wires instantly apparent being the extra large glass insulators on the top wires, the 440-volt wire having only ordinary insulators.

The brief of defendant states the following: "For the purpose of this appeal only, it is conceded that the

state of the evidence was such as to make it a question for the jury whether the deceased was sufficiently qualified and experienced to be sent to do this work, without definite instructions, and to be intrusted with the discretion of looking after the safety of the place in which he worked.''

The deceased left no widow or lineal heirs, and no mother surviving him. The plaintiff is the father of the deceased, and has resided in Texas continuously for many years. Affirmed. Rehearing Allowed.

ON REHEARING AFFIRMED.

For appellant there was a brief over the names of *Mr. Asa C. Hough* and *Messrs. Neff & Mealey,* with oral arguments by *Mr. Hough* and *Mr. Porter J. Neff.*

For respondent there was a brief and an oral argument by *Mr. Alfred E. Reames.*

Mr. Justice Bean delivered the opinion of the court.

The part of the Employers' Liability Act particularly applicable provides as follows: ''In the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or the employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come in contact with the wire, and dead wires shall not be mingled with live wires, nor strung upon the same support, and the arms or supports bearing live wires shall be especially designated by a color or other designation which is instantly apparent and live electrical wires carrying a dangerous voltage shall be strung at such distance from the pole or supports as to permit repairmen to freely engage in their work without danger of shock.'' Then

follows the provision: "And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, and shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices." Section 4 of the act is as follows: "If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act by any owner, contractor, or subcontractor, or any person liable under the provisions of this act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of action without any limit as to the amount of damages which may be awarded."

Plaintiff complains that defendant violated the statute in the following particulars: (1) That the wires were not insulated where the employees were liable to come in contact with them; (2) that dead wires were mingled with live wires; (3) that the electric wires were so close to the poles that the workmen engaged in their work were in danger of a shock; (4) that the arms or supports bearing the live wires were not properly designated by color or otherwise; (5) that the cut-off switches were not near enough to the required work to make the use of the same practicable, and that an experienced electrician should have been immediately present to superintend and warn the operator, and that it was necessary for the company to have rules and specific regulations for the protection of the employees, directing how the work was to be done. It

is sufficient to say that the evidence tended to show a failure on the part of the defendant to comply with the terms of the statute, which is negligence *per se:* *Peterson* v. *Standard Oil Co.,* 55 Or. 511 (106 Pac. 337, Ann. Cas. 1912A; 625); *Burroughs* v. *Curtiss Lumber Co.,* 58 Or. 270, 275 (114 Pac. 103); *Morgan* v. *Bross,* 64 Or. 63 (129 Pac. 118).

Mr. Loder, superintendent of the company, when questioned by a juror, testified:

"Q. Let me ask—did you, as superintendent of construction, tell this boy he should cut the current off to make connection with hot wires?

"A. No; I didn't tell him to do so. * *

"Q. Is it your judgment to-day that it wasn't lack of judgment on McClaugherty's part in failing to turn off the current?

"A. Well, as I feel to-day, and as I felt then, is tempered by experience of subsequent things that have happened. I might say to-day that a man ought to have pulled those plugs, where, at that time, I might have—I certainly did feel that he was perfectly able and perfectly capable to do that job, and I may have felt and possibly said that it was all right.

"Q. Yes; I understand there are things happened to change your judgment. I will ask you if now, to-day you would tell him, James McClaugherty, to turn that current off, or do the job hot or cold?

"A. You bet your boots I would tell him to turn that current off.

"Q. Did you tell him?

"A. No, sir.

"Q. And the company didn't have any rules whether a man was to turn the current off, hot or cold?

"A. No, sir; they did not."

1. Al Wright, witness for plaintiff, testified in part that he had been engaged in the electrical work for 2 years, having worked for the defendant under superintendent Loder for the past 13½ months; that

he and James McClaugherty worked together quite a bit; that he heard McClaugherty ask Loder for help at the time the former was sent to do the work where the accident occurred; that he went to the place the next day with Mr. Loder, who finished the work in the presence of others; that the witness received the same pay as McClaugherty, and had before this made a live or hot wire connection, but not unassisted. On cross-examination this witness testified in part to the effect that as to whether, if called upon to do the work, and there was means at hand whereby he could protect himself by turning off the electricity from the line, he would do it hot or deaden the line would depend upon circumstances; that in most cases he would have to figure it out himself; that in some cases he would take the safest; and the reason why a man in any instance would take the unsafe way would be on account of the distance he would have to go to kill the line. There was considerable evidence introduced as to how the work should be done, as to the danger, and the fact that a "line is never safe when working alone." On re-direct examination the witness was asked the question: "Q. Well, now, if you received instructions to do this work, you heard the instructions Mr. Loder said he gave, and you found the Opp mine beyond this place running, and the cyanide plant running, and he did not tell you to turn off the power, would you interpret his instructions to mean that you were to do it hot or turn it off?" To this counsel for defendant objected, on the ground that it was incompetent, irrelevant and immaterial; that "it would be his interpretation." Owing to the particular cross-examination, the court allowed an answer, and defendant saved an exception. The witness answered: "I should judge that he meant to do it hot." It is contended that

this was error. It is clear that the information elicited from the witness pertained to the custom of the officers of the company in vogue at the time, and the understanding of the employees as to the manner of directing how the work should be done, and not to the ultimate conclusion to be drawn by the jury. The evidence objected to does not come within the rule in *Johnston* v. *Oregon S. L.*, 23 Or. 94, 101 (31 Pac. 283). While the form of the question may not be perfect, the answer obtained was no stronger against the defendant than the testimony of the superintendent himself. It will be noticed from the excerpt of his evidence that he did not instruct the decedent to turn off the current of electricity, nor does he appear to claim that he expected it would be done. The testimony objected to does not, in effect, materially contradict that of the defendant upon the same subject. We fail to see that from any view defendant's rights were prejudiced.

2. Defendant's counsel requested the court to give the jury several instructions which, prior to the passage of the Employers' Liability Act, would have been unobjectionable. The court refused to charge the jury as requested, to which defendant's counsel duly saved an exception.

The first requested instruction, the refusal of which is now urged as error, is based upon the contention that the defendant was not guilty of negligence if it furnished appliances and instrumentalities adequate to render the place safe where the decedent worked, and if he understood fully the dangers to be avoided, and the manner of using the instruments so as to avoid the danger, and voluntarily chose not to make use of them. This relates to the cut-off switches and their use.

The second instruction is to the effect that the defendant was not bound to insulate the wires if it provided adequate means of shutting off the electricity, and is based upon the contention that the decedent assumed the risk.

The third is to the purport that, if the jury found that insulation of the wires would have furnished partial protection, and that switches would have supplied more adequate protection, and rendered insulation unnecessary, then it was not negligence for defendant to furnish switches, and not provide the insulation.

The fourth is as follows: "If the defendant furnished the deceased appliances and instrumentalities adequate to render the place where he was required to work safe and suitable, and the deceased understood fully the dangers to be avoided, and the manner of using the instrumentalities and appliances so as to avoid these dangers, but nevertheless the deceased voluntarily chose not to make use of them, the defendant is not liable for the injuries sustained by the deceased from the dangers which would have been removed had the appliances been made use of."

The contention of the defendant as to all these requested instructions assumes that under the Employers' Liability Act the company was at liberty to furnish substitutes for those things required by the terms of the act; that is, instead of "full and complete insulation" being provided at all points where employees are liable to come in contact with the wires carrying electricity of a dangerous voltage, instead of dead wires not being mingled with live wires, nor strung upon the same support, and the arms or supports bearing live wires being "especially designated by a color or other designation which is instantly apparent," and instead of such live wires being strung

far enough from the poles or supports to permit the repairmen to engage in their work without danger of shock, all as required by the act, the defendant could furnish cut-off switches so that the current of electricity could be shut off, and then the company would not be negligent, notwithstanding the fact that the provisions of the statute were not complied with. Such, however, is not the law. The requirements of the statute as to the safeguards enumerated are positive and mandatory. There are no alternatives. Such a protection as furnishing facilities for cutting off of the current would come more particularly within the general requirements of the statute above quoted, and would not render the specific details as to transmission of electricity unnecessary, nor serve as an excuse for a noncompliance with the law in other respects, in case of injury by reason of such neglect. The statute, in making the regulations as to the location and insulation of the wires, presupposes that workmen will work on the poles or supports when the wires are charged. If, instead of the requirements enumerated, the law had provided that cut-off switches should be provided, then defendant's contention would be maintainable.

3, 4. Electricity is a dangerous element, and in the use thereof the highest degree of care is required to protect the life and limb of the employees and the public: 15 Cyc. 472; *Myers* v. *Portland Ry. L. & P. Co.,* 68 Or. 559 (138 Pac. 213, 215), and cases there cited. Our statute recognizes this rule, and makes plain provisions for minimizing the danger to life and limb in the transmission of this dangerous agent. It is asserted in the brief of defendant that the second instruction requested is based upon the principle that the decedent, by not turning off the current, assumed

the risk. As we understand them, the other requests to charge the jury, taken in full, invoke the same principle. It was held in the case of *Schulte* v. *Pacific Paper Co.*, 67 Or. 334 (135 Pac. 527), that the effect of the Employers' Liability Act is to eliminate the defense of assumption of risk in actions within it, citing *Welsh* v. *Barber Pav. Co.*, 167 Fed. 465 (93 C. C. A. 101); *Caspar* v. *Lewin*, 82 Kan. 604 (109 Pac. 657); *Bair* v. *Heibel*, 103 Mo. App. 621 (77 S. W. 1017).

The means of turning off the electricity was some distance from where the decedent was directed to install the motor; the cut-off plugs being about one-half mile, and the substation about 1½ miles therefrom. It does not appear whether McClaugherty had a key to the substation or not. The jury, in considering whether the company had complied with the general provisions of the statute referred to, may have believed that it was not practicable for the boy to turn off the current before making the connection of the wires. However this may be, the furnishing the switches would not exculpate the company from negligence in failing to comply with the other plain provisions of the statute, as to safeguarding the wires. There was no error in the refusal of the court to give the instructions requested by defendant. The trial court specifically instructed the jury as to the requirements of the statute, and that the question for them to determine was whether or not the defendant failed to provide any of the safety appliances or conditions alleged in the complaint, and whether such failure resulted in injury to James McClaugherty. We think the question of negligence was fairly submitted to the jury.

5, 6. As to the measure of damages, after telling the jury that, if they found that the decedent was

guilty of contributory negligence, they should ·consider the same in fixing the amount of damages, the court instructed them in substance that, in case they found plaintiff was entitled to recover, in ascertaining the damages, they should take into consideration the decedent's age at the time of receiving the injury, his probable expectancy of life as shown by the evidence, and his earning capacity,· and determine the amount the same as though decedent had lived and could have himself sued; that the amount could not exceed the damages actually sustained. The defendant's counsel objected and excepted to such instructions, and assigns the same as error. This raises the main question in the case, and is a very important inquiry. It is earnestly contended by defendant's counsel that the measure of damages under the statute is confined to the pecuniary loss to plaintiff by reason of the death of the son, that is, to such an amount as would equal the value of the services of decedent during his minority, less the reasonable cost of his support during that period, together with such assistance and support as the father would probably have received from his son after the latter's majority had he lived; that the jury should consider the probable length of life of the father, the relations existing between the father and the son, and the probable future assistance to the father ·from the son. They asked the court to so charge the jury. No question arises aŝ to damages occurring between the time of the injury and the date of the death, as the latter was instantaneous. The right of action in a proper case nevertheless exists: *Perham* v. *Portland Elec. Co.,* 33 Or. 451 (53 Pac. 14, 24, 72 Am. St. Rep. 730, 40 L. R. A. 799). Hence that part of the charge referring to the decedent as though

he were alive and could have himself sued was, as we
understand it, simply an illustration.

The Employers' Liability Act, as passed by the
people of the state, differs from any other statute
which we have been able to find; therefore the adjudi-
cations of cases under other acts are of but little as-
sistance in applying the provisions of our statute.
Some expressions in the earlier opinions in cases under
statutes somewhat similar to our own shed light upon
the principle involved.  In *Pennsylvania R. Co.* v. *Mc-
Closkey's Admr.*, 23 Pa. 526, an action brought by an
administrator for the loss of the life of Wm. Mc-
Closkey by the negligence of the defendant, the trial
court allowed the jury to find the damages according
to the value of the life lost, to compute them by the
probable accumulations of a man of such age, habits,
health and pursuits as the deceased during his prob-
able lifetime.  Mr. Justice LOWRIE, in affirming the
judgment, after discussing the ancient laws, at page
530 of the opinion, said: "Our act of April 15, 1851,
seems to express its purpose better than the English
one heretofore referred to. * * The first of these sec-
tions is very plain, and it provides that the personal
representatives may continue the action commenced;
that is, may proceed and recover the very damages to
which the deceased would have been entitled had he
survived until verdict and judgment.  The other sec-
tion is somewhat less definite in regard to the damages
intended; but this very indefiniteness is proof that no
other thought was in the mind of the legislature than
the wrong and damage done to the decedent, else it
would have been made to appear.  If one section re-
lated to damages done to the deceased, and the other
to damages done to his relatives, these contrasted
thoughts could hardly have failed to come out clearly

in the expression. But, even if this were otherwise, we do not perceive how it could influence the damages, for they must necessarily be measured by the absolute value of the life lost, and not by the pecuniary loss which the designated representatives shall have thereby sustained.''

The case of *Railroad Co. v. Barron,* 5 Wall. 90 (18 L. Ed. 591), was brought under a statute of Illinois giving the right of action to the personal representatives of the person killed by such an act as would, if death had not ensued, have entitled such person to maintain an action for damages. The statute provided that ''in every action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding,'' etc. It was held that it was not necessary to recovery that the widow and next of kin should have had a legal claim on the deceased for their support had he survived; that the damages in those cases must depend very much upon all the facts and circumstances of the particular case, and that, when the action is brought by the party himself for injuries to himself, there could be no fixed measure of compensation for the pain and anguish of body and mind, nor for the loss of time and care in business, or the permanent injury to health and body, so that, when the suit was brought by the representative for his death, the pecuniary injury resulting from the death to the next of kin was equally uncertain and indefinite; that in the latter and more difficult case, as in the former one, often difficult also, the result must be left to turn mainly upon the sound sense and deliberate judgment of the jury applied to all the

facts and circumstances. The court, at page 105 of 5 Wall. (18 L. Ed. 591), said:

"But the statute in respect to this measure of damages seems to have been enacted upon the idea that, as a general fact, the personal assets of the deceased would take the direction given them by the law; and hence the amount recovered is to be distributed to the wife and next of kin in the proportion provided for in the distribution of personal property left by a person dying intestate. If the person injured had survived and recovered, he would have added so much to his personal estate, which the law, on his death, if intestate, would have passed to his wife and next of kin; in case of his death by the injury, the equivalent is given by a suit in the name of his representative."

In *Mollie Gibson Cons. Min. & Mill. Co.* v. *Sharp,* 5 Colo. App. 321 (38 Pac. 850), the measure of damages was discussed. The court said:

"It is always described as compensatory, and never as a solace for wounded feelings. It is, however, exceedingly clear that, while it is permitted to give testimony concerning the relations of the deceased to the plaintiff, in order to form a just estimate of the probable damage, yet the recovery is not to be measured or determined by the extent of the contributions or support furnished by the one to the other. In other words, although the deceased as a son may never yet have contributed to the support of his father, yet, when the son's age, habits, earning capacity and the age of the father are once established, a recovery may be had for the probable injury which the father has sustained in the loss of his son."

The question was dealt with in *Trimmier* v. *Atlantic & C. A. L. Ry. Co.,* 81 S. C. 203, 213 (62 S. E. 209, 212), a case which was submitted to the jury, practically the same as the one at bar. It was contended that the life expectancy of the person for whose benefit the action was brought should have been considered. The

court said: "We fail to see wherein the probable duration of the father's life has any relevancy to the issues involved, as the amount recovered is the absolute property of the beneficiary under the terms of the statute."

The cases of *Barksdale* v. *Railway,* 76 S. C. 183 (56 S. E. 906), and *Hull* v. *Railway,* 76 S. C. 278 (57 S. E. 28, 10 L. R. A. (N. S.) 1213), sustain the proposition that it is not essential to the recovery of damages that the person for whose benefit the action is brought should be dependent upon the deceased for support, nor that the beneficiary should suffer pecuniary loss: See, also, *Clark* v. *Tulare Lake Dredg. Co.,* 14 Cal. App. 414 (112 Pac. 564) ; *Peters* v. *Southern Pac. Co.,* 160 Cal. 48 (116 Pac. 400). The case of *Matthews* v. *Warner's Admr.,* 29 Gratt. (Va.) 570 (26 Am. Rep. 396), was brought under a statute of Virginia providing that the claim for damages may be maintained by the personal representative of one whose death has been occasioned "by the wrongful act, neglect or default of any person or corporation." In that case an instruction was requested and refused as to the measure of damages, similar to the one requested in the case at bar, to the effect that, in assessing the damages, the jury must confine themselves to the injuries of which a pecuniary estimate can be made, with reference to a reasonable expectation of pecuniary benefit, as of right or otherwise, to his mother from a continuance of the life of the deceased son. The Virginia statute declared that "the jury in any such action may award such damages as to it may seem fair and just," etc. In affirming the judgment, at page 577 of the opinion, Mr. Justice Christian said: "I think it is manifest that the legislature intended, as in Kentucky, Iowa, Connecticut and California (which states are exceptional to the English statute), to allow the jury

in such cases to award punitive and exemplary damages.''

Under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Fed. Stats. Ann. Supp. 1909, p. 584, U. S. Comp. Stats. Supp. 1911, p. 1322]), in case of the death of an injured employee, his personal representative brings the action for the benefit of those surviving him.  They are entitled to the proceeds of any judgment recovered in the following order: (1) The surviving widow or husband and children of such employee; (2) if there be no husband, widow or children, then for the benefit of the employee's parents; (3) if there be no beneficiaries in the first and second classes, then for the benefit of the next of kin dependent upon such employee: Thornton's Fed. Em. Liability etc. Acts (2 ed.), p. 168.   On page 169 this author states: ''If there be no widow or husband and children or parent of the deceased employee, then 'the next of kin dependent upon' him are entitled to the proceeds of the action. * * Partial dependency is sufficient to authorize the maintenance of the suit.   But in the case of a widow, husband, child or parent no question of dependency is involved.''   In support of the last statement, which is very pertinent to the construction of our statute, the case of *Beaumont Traction Co.* v. *Dilworth* (Tex. Civ. App.), 94 S. W. 352, is cited.   In cases under the federal act the reason for requiring evidence that a beneficiary coming within the third class is dependent upon the deceased person is on account of the use of the words ''dependent upon such employee.''   These words make a marked difference between the federal statute and the Oregon statute.   It may be noticed, however, that under Section 7054, L. O. L., parents are bound to maintain their children when poor and unable to main-

tain themselves, and children are bound to maintain their parents under like circumstances.

7. The common-law rule of nonliability for the death of a person by reason of negligence or wrongful act was changed in this state before the adoption of the Employers' Liability Act: Sections 34, 380, L. O. L. The recent compensation acts, both American and English, and the Employers' Liability Acts illustrate the present-day reaction against the severity of the common law: Thornton's Fed. Em. Liability, etc., Acts (2 ed.), p. 3. The measure of damages under most of the statutes giving a right of recovery for the death of a person is the amount of pecuniary assistance and support which they might have reasonably expected to receive from the deceased had he lived: Note to *Louisville etc. Ry. Co.* v. *Goodykoontz* (Ind.), 12 Am. St. Rep. 378. This rule, as we understand, is on account of the words of limitation found in Lord Campbell's Act and the statutes of the different states. In this the Oregon statute differs from those noted, especially as to the measure of damages. It plainly provides that for the loss of life by reason of the neglects, or failures or violations of the provisions of the act by any owner, contractor or subcontractor, or person liable under the terms of the act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother or father, as the case may be, shall have a right of action, without any limit as to the amount of damages which may be awarded. We think this statute clearly gives a right of action to the beneficiaries named therein for the value of the life of an employee lost by reason of the acts of negligence enumerated in the enactment: *Carlson* v. *Oregon S. L. Ry. Co.,* 21 Or. 450, 459 (28 Pac. 497). Such statutes, while they are not to be strictly construed, are not to be extended by

implication, as they are in derogation of the common law: 26 Cyc. 1360.

Mr. Justice Moore, in *McFarland* v. *Oregon Elec. Ry. Co.,* 70 Or. 27 (138 Pac. 458), referring to Section 4 of the Employers' Liability Act, says that it "is remedial, and, as far as possible, ought to be liberally construed in favor of the beneficiaries." In that case, Neal McFarland having died unmarried, without lineal heirs or adopted children, but leaving a mother surviving him, it was held that she was the sole beneficiary of any sum that might be recovered as damages resulting from the son's death, to the exemption of his father.

In *Hawkins* v. *Barber Asphalt Pav. Co.* (D. C.), 202 Fed. 340, 341, Mr. Justice Wolverton considered some features of this statute. He said: "It would seem that this statute gives an action for negligence arising from particular acts, and, so far as it gives a right of action for the death of a person, it is akin to Lord Campbell's Act. This may be termed a survival action. At common law there was no right of action for the death of a person; but it is the purpose of this act to give to certain individuals such a right. In my view of the statute, it gives but one action, which is not cumulative in its purpose or character. This action survives to the widow of the person killed, his lineal descendants or adopted children, etc., and the right of action is without limit as to the amount of damages."

In Tiffany, Death by Wrongful Act, Section 158, commenting on the use of the word "pecuniary" as used in the New York act and others, it is stated: "The use of 'pecuniary' to designate the kind of loss for which recovery can be had is misleading, for the damages are by no means confined to the loss of money, or of what can be estimated in money. * * The word

has been used rather for the purpose of excluding from the recovery damages to the feelings and affections than of confining the damages strictly to those injuries which are 'pecuniary' according to the ordinary definition." In Illinois the rule is established that, where the next of kin sustain a lineal relation to the deceased, the law presumes some substantial damages from the relationship alone, and it is not essential to show that they received pecuniary assistance from the deceased, although, of course, it is competent to show that such assistance was given: Tiffany, Death by Wrongful Act, § 167; *Dukeman* v. *Cleveland, C., C. & St. L. R. Co.*, 237 Ill. 104, 109 (86 N. E. 712).

In. *Olivier* v. *Houghton St. Ry. Co.*, 138 Mich. 242 (101 N. W. 530), an action by an administrator for an injury causing death through negligence, at page 244 of the opinion, the court said: "When the deceased received his injury, he stood entitled to recover then and there the loss sustained by being deprived of the power to earn money during the period he would have lived had he not suffered the injury. It would not, under these decisions, have been any answer for defendant to say that, 'while this is precisely what we have deprived you of, you cannot recover at all, as we have, in addition to crippling you, shortened your life.' "

The Employers'. Liability Act authorizes an action to recover compensation for the life lost through the negligence specified in the act. It contemplates but one action for such injury. The amount is not confined to the pecuniary loss occurring to the beneficiary, occasioned by the death of the employee. It was evidently intended that the surviving relatives named in the law should have the right to recover for the wrong causing the death. The instruction asked by defend-

ant, limiting the damages to an amount equal to the
value of the services of the decedent during his mi-
nority, less the reasonable cost of his support, together
with the pecuniary assistance the father would prob-
ably have received after the son's majority had he
lived, would confine the amount of compensation within
narrower limits than contemplated by the terms of the
act.   To enforce such a measure of damages would be
in effect interpolating words of limitation into the act.
In its charge to the jury the trial court, by restricting
the amount to the actual damages sustained, precluded
the jury from awarding any compensation for any
grief or mental anguish of the father of decedent, and
also excluded punitive damages.   The instruction
given corresponds as nearly as the present statute
would warrant to that approved in *Carlson* v. *Oregon
S. L. Co.,* 21 Or. 450, 459 (28 Pac. 497).   The charge
given by the trial court was a fair general rule as to
the measure of damages, and, in the absence of a re-
quest for more specific instruction upon some point
within the purview of the statute, it was a sufficient
guide to the jury in estimating the amount of com-
pensation to be awarded for the death of plaintiff's
son.

8. The dependency of the plaintiff upon the decedent
is not the basis of the action.   There being no other
relatives named in the act living, besides the father,
his right of recovery is given by virtue of and is de-
rived from the statute.   In the absence of others hav-
ing a superior right under the law, all that it was
necessary for plaintiff to show upon this point to en-
title him to recover was that he was the father of
James McClaugherty, deceased, thus showing the kin-
ship required by the act.   Pecuniary loss by plaintiff
may be proven as an element of damages; but such loss

is not essential to recovery: *Barksdale* v. *Railway,* 76 S. C. 183 (56 S. E. 906); *Hull* v. *Railway,* 76 S. C. 278 (57 S. E. 28, 10 L. R. A. (N. S.) 1213.)

There is necessarily difficulty in fixing a pecuniary value upon human life. In all actions for the wrongful death of a person, the amount of compensation to be recovered must depend to quite an extent upon the good judgment of the jury upon a consideration of all the facts and circumstances of each particular case under proper instructions as to the law applicable thereto: 13 Cyc. 375; *Carlson* v. *Oregon S. L. R. Co.,* 21 Or. 450, 459 (28 Pac. 497). The physical condition, age, etc., of the father, the beneficiary, were not material as bearing upon the amount of recovery: *Seattle Electric Co.* v. *Hartless,* 144 Fed. 379 (75 C. C. A. 317). The right of recovery does not depend upon such conditions. The law confers the right in certain cases upon certain named beneficiaries. There was no error in failing to instruct the jury as requested by defendant's counsel.

Finding no reversible error in the record, the judgment of the lower court is affirmed.

AFFIRMED.   REHEARING GRANTED.

---

Affirmed November 10, 1914.

ON REHEARING.

(144 Pac. 569.)

A rehearing having been allowed in this case on the 7th day of July, the cause was reargued on July 28, and former opinion adhered to on November 10, 1914.

AFFIRMED ON REHEARING.

For appellant there was a brief over the names of *Messrs. Neff & Mealey, Mr. Asa C. Hough, Messrs.*

*Carey & Kerr* and *Mr. Harrison Allen,* with an oral argument by *Mr. Porter J. Neff.*

For respondent there was a brief and an oral argument by *Mr. Alfred E. Reames.*

In Banc.   Mr. Justice Bean delivered the opinion of the court.

9. No new question is presented upon a reargument of this case.   It is urged with a great deal of emphasis that the trial court erred in ruling upon the evidence and instructing the jury in regard to relations existing between the decedent, James McClaugherty, and his father, the plaintiff, and the habits and probable length of life of the beneficiary, as bearing upon the amount of damages recoverable.   The court excluded evidence offered by the defendant concerning the habits of the plaintiff as to drinking.   Such evidence must be considered as likely to prejudice the jury, or as an attempt to govern the amount of damages to be recovered by the probability of how the amount received as compensation for the alleged injury would be expended by the father.   The Employers' Liability Act (Section 4), under certain conditions, gives a right of action to the father in case of the wrongful death caused by a failure to conform to the provisions of the act, "without any limit as to the amount of damages which may be awarded."   The statute does not base the right of action, nor the amount of recovery, upon the moral excellence or standing of either of the beneficiaries named in the act, nor make the conduct of such beneficiary a criterion either as to such right or amount of recovery.   Such compensation should not be increased nor diminished on account of the character or habits of the person entitled to the same: *Consolidated Stone*

*Co.* v. *Morgan,* 160 Ind. 241, 248 (66 N. E. 696).   The evidence offered was properly excluded.

In the case mentioned, under a statute providing that damages recovered for death caused by negligence must inure to the benefit of the widow and children, if any, testimony in regard to the habits and moral character of the widow of the decedent was held to have been properly excluded.   The court carefully stated the issues made by the pleadings and instructed the jury in part as follows:

"The law provides that if an electric company, transmitting high voltage current, fails to comply with those requirements to which I shall call your attention, and death shall result from such failure, then the electric company shall be liable for the damages *actually sustained,* and there shall be no limit as to the amount of damages which can be recovered, excepting, of course, that the same cannot exceed the amount sued for, nor can they exceed the damages actually sustained."

After fully explaining the provisions of the act, the court further instructed the jury as to the measure of damages, to the effect that, if they found for the plaintiff, he was entitled to recover the same amount James McClaugherty would have been entitled to recover, had he survived, but received the injury "under the same circumstances, and in considering that question you will take into consideration his age at the time of receiving the injury, his probable expectancy of life, as shown by the evidence, and his earning capacity, and determine the amount, in case you shall find for the plaintiff."

10. As we understand the contention of learned counsel for the defendant, although upon this point they do not agree, the act in question is a "death" statute, and this is not a survival action.   In so far

as definitions are of any assistance, we would be inclined to the belief that the law partakes of the nature of both.   As said by Mr. Justice Wolverton, in *Hawkins* v. *Barber etc. Co.* (D. C.), 202 Fed. 341:

"So far as it gives a right of action for the death, * * it is akin to Lord Campbell's Act. * * This action survives to the widow of the person killed, his lineal descendants, or adopted children," etc.

We quote from the brief of one of defendant's counsel:

"The Employers' Liability Act of 1910 is not a dependent statute, but a survival statute, and is akin to Section 34, L. O. L., and Section 380, L. O. L."

As stated in our former opinion, the act authorizes but one action for an injury caused by a violation of the law in case of death.   Where there is any one of the beneficiaries named living and in a position to bring the action, it cannot be brought by the personal representative of the decedent, under Section 380, L. O. L.   The act obviates the necessity and expense of the appointment of an administrator for the purpose of bringing the action.   Nevertheless an action under Section 4 of the act takes the place of, and serves practically the same purpose as regards the amount of compensation to be recovered as, an action by an administrator under Section 380, L. O. L., save that there is no limit as to the amount.   The proceeds of a judgment take a different direction, not going to the estate of the decedent, but direct to the beneficiary.

11. The instruction given to which exception is taken was in substance the same as the one approved in *Carlson* v. *Oregon S. L. Co.*, 21 Or. 450 (28 Pac. 497), which was an action for an alleged wrongful death, brought by an administrator under Section 380,

73 Or.—11

L. O. L. Under certain circumstances there may still be cases brought by a personal representative under Section 380, L. O. L. (*Statts* v. *Twohy Bros.*, 61 Or. 602 (123 Pac. 909), and we do not think the Employers' Liability Act indicates that a different general rule as to the measure of damages should be applied in one kind of a case from that applied in the other. If there should be, it would cause much confusion. As said by former Justice BEAN in the Carlson case:

"There is an inherent difficulty in placing a pecuniary value upon human life; and in an action for the wrongful death of a person, the amount of damages recoverable must depend very much on the good sense and sound judgment of the jury, upon all the facts and circumstances of each particular case. The jury may make the estimate of damages themselves, from the facts proved, yet their estimate must be based upon the facts in evidence, and they should be properly instructed as to the law applicable to the facts before them": *Carlson* v. *Oregon S. L. Co.*, 21 Or. 450, 457 (28 Pac. 497, 499).

The actual loss, within the meaning of Section 4 of the Employers' Liability Act, as applied to the facts in the case at bar, is the net amount which the decedent would probably have saved from his earnings by his skill and bodily labor, in his calling or profession, during the residue of his life, had he survived, taking into consideration his age, health, ability, habits of industry, sobriety and mental and physical skill, so far as they affect his capacity for earning money by rendering service to others or accumulating property. This is substantially as the trial court gave the law to the jury in a general way. It is not contended upon this rehearing that the instructions requested as to the measure of damages were strictly accurate, or should

have been given: *Carlson* v. *Oregon S. L. Ry. Co.*, 21 Or. 450, 457 (28 Pac. 497, 499); *Holmes* v. *Oregon & Cal. R. R.* (D..C.), 6 Saw. 294 (5 Fed. 523).   The damages are compensatory, not punitive or exemplary. Nothing can be allowed as a solace to wounded feelings or mental suffering.   In fixing the amount under the very general and indefinite language of the statute, much must of necessity depend upon the judgment of the jury upon the facts in each particular case. ·

After a careful examination of the record, and a consideration of the able argument and briefs of counsel, we do not find any reversible error in the record.

The judgment of the lower court will therefore be affirmed.

Affirmed.   On Rehearing Former Opinion Approved.