Argued April 1, affirmed April 21, rehearing denied June 2, 1914.

## McDANIEL v. LEBANON LUMBER CO.

### (140 Pac. 990.)

**Master and Servant—Injuries to Servant—Actions—Instructions.**

1. In an action for the death of a servant in a sawmill, where a factory certificate to the effect that the factory act has been complied with, is introduced in evidence, and a deputy labor commissioner testifies that he inspected the premises before its issuance, but also testifies that he did not know of defects in the machinery shown by the evidence, an instruction that the purpose of the factory certificate as evidence is to aid in discovering the motives of the deputy labor commissioner, that the factory act is not the law under which the action is brought, and the labor commissioner is not the official to determine whether plaintiff has proven her case, but that is exclusively for the jury in the light of the instructions, is not error, though Section 5046, L. O. L., makes the factory certificate *prima facie* evidence of compliance with the act.

> [As to liability of master to servant for injuries by saw operated by machinery, see note in Ann. Cas. 1913C, 125.]

**Trial—Instructions—Province of Court and Jury—Submission of Questions of Law.**

2. In an action for death of a servant, an instruction as to decedent's assumption of risk, if the jury find that defendant had not violated any statute relative to its machinery, without a statement of the obligations put upon an employer by statute, is properly refused as a submission of a question of law to the jury.

**Master and Servant—Injuries to Servant—Assumption of Risk—Statutory Provisions.**

3. Employers' liability law (Laws 1911, p. 16), Section 1, requiring persons having charge of any work involving risk to employees to use every device, care, and precaution practicable, limited only by the necessity for efficiency, and without regard to cost, and Section

3, imposing penalties for failure to comply with the act, eliminates the defense of assumed risk in actions within it.

**Death—Actions for Causing Death—Measure of Damages.**

4. Whatever rule of damages may have applied under Section 380, L. O. L., giving a right of action for wrongful death to the personal representatives of the decedent, the same does not apply to an action under employers' liability law (Laws 1911, p. 16), giving a right of action for death caused by violation of that law to certain persons, excluding the estate of the decedent, except where none of the persons named is in existence, or the person entitled resides in a foreign country so remote as to render it extremely difficult to prosecute the action, and in other cases the damages are measured by the pecuniary loss of the person entitled to them.

[As to the measure of damages for causing the death of a human being, see note in 12 Am. St. Rep. 375.]

From Linn: PERCY R. KELLY, Judge.

Department 1.　Statement by MR. JUSTICE MOORE.

This is an action by Nellie McDaniel against the Lebanon Lumber Company, a corporation, to recover damages resulting from the death of her husband, Warren McDaniel, January 4, 1912, while he was employed in the defendant's sawmill. The negligence set forth in the complaint and relied upon as forming a basis for the recovery consists briefly in the alleged carelessness of the defendant in providing and using in its mill a defective canting gear; in furnishing headblocks that were not of sufficient height; in not supplying guards to prevent logs from being thrown over the headblocks and upon the saw carriage; in placing a hook in a dangerous situation on the carriage; in not warning the deceased of dangers that were not apparent to him; and in failing to instruct him as to the duties demanded of him, and of which he was ignorant, as the defendant well knew, by reason whereof a chain attached to the canting gear, and encircling a log, was fastened to a hook on the back side of the saw carriage, causing the log when the power was applied to be hurled violently over the headblocks and to the

rear of the carriage, where McDaniel, who was employed as a ratchet tender, was stationed, thereby striking and immediately killing him.

The answer admits that plaintiff is the widow of the deceased, and that the defendant is a corporation, but denies the other averments of the complaint. For a separate defense it is substantially alleged that the death of McDaniel resulted from his own contributory negligence combined with the carelessness of his fellow-servants; that he recklessly took an unsafe position too near a log which, swinging, caused the injury; that the accident was unavoidable; and that he had been instructed as to his duties, knew the dangers incident thereto, and assumed the risks pertaining to his employment.

The reply put in issue the allegations of new matter in the answer, whereupon the cause was tried, resulting in a verdict and judgment for the plaintiff for $6,500, and the defendant appeals.        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Hewitt & Sox,* and *Messrs. Wilbur & Spencer,* with an oral argument by *Mr. Ralph W. Wilbur.*

For respondent there was a brief over the name of *Messrs. Weatherford & Weatherford,* with an oral argument by *Mr. Mark Weatherford.*

Mr. Justice Moore delivered the opinion of the court.

It appears from a transcript of the testimony, given at the trial, that the defendant owns and operates at Lebanon, Oregon, a mill in which lumber is manufactured. For that purpose logs are hauled from a pond in which they are stored into the mill, where they are arranged in a row on a platform, one edge of which is

near the track of the carriage. In order to put thereon a log, or to turn one after a slab has been sawed therefrom, an overhead canting gear is employed. This mechanical appliance consists of an iron spool, having at one end a pulley with which a friction pulley engages by a lever operated by the sawyer. Attached to the spool is a chain, one end of which descending is placed several times round a large log and fastened to an iron dog or sharp hook driven therein. If the log is small, however, the chain is generally placed beneath it and carried over and fastened to a hook on the rear side of the carriage. When thus prepared the sawyer shifts a lever bringing the friction pulley in contact with the pulley at the end of the spool whereby the chain is wound up, rolling a large log from the platform, or pushing a small one to and upon the carriage against the headblocks, to which it is fastened by iron dogs. When thus secured the log is pushed by the headblocks toward and in line with the saw by the movement of a ratchet lever operated by an employee who for that purpose rides the carriage which is moved forward along the track, and against the teeth of the saw, a distance equal to the length of a log. The carriage is then brought back, and, if the log is not turned by the canting gear so as to form a right angle with the line thus cut, the ratchet setter by a signal from the sawyer operates the lever forcing the log out the requisite distance to saw as indicated a board, a plank, or a cant, when the carriage is again returned, and the process continued until the log is manufactured into lumber.

The plaintiff's husband, who, when he was injured, was 28 years old, had been employed by the defendant at its mill yard 2½ months when, without any previous experience, he was put to work as ratchet setter on the

log carriage, and had been so employed 5 or 6 days when the accident occurred. In undertaking to move a small log about 18 inches in diameter and 18 feet in length from the platform to the carriage, McDaniel passed round the log the end of the chain leading from the canting gear, carrying it to the rear side of the carriage, where it was made fast to a hook placed there for that purpose. At his signal the sawyer applied the power to the friction pulley connected with the canting gear; but the chain, not being perpendicular, caused the spool to be pressed by the weight of the log and the angle of the draw chain so firmly against the other pulley that the lever by which the mechanism was operated could not be released, whereupon the log was violently hurled over the top of the headblocks toward the rear side of the carriage, where McDaniel was stationed, striking him upon the breast and inflicting the injury mentioned.

W. O. Robertson, who had been employed in defendant's mill nearly 4 years as sawyer, but who was not thus engaged at the time of the accident, testified, as plaintiff's witness, that the friction gear had been caught and bound several times, in consequence of which the chain referred to had been broken.

L. W. Anderson, who had also been employed in that mill and worked on the carriage about 2 months prior to the injury, testified that during such interval the friction gear had been caught several times, thereby breaking the chain connected with the canting gear.

W. B. Chance, a deputy labor commissioner, as defendant's witness, testified that a day or two before the accident he examined the defendant's mill, and, concluding from the investigation that the machinery and appliances therein conformed to the requirements of the statute relating to factory inspection, he caused

a certificate to that effect to be issued. This creden-
tial is dated February 16, 1912, recites that unless
sooner revoked it will be in force and effect for one
year from May 8, 1911, and over objection and excep-
tion of plaintiff's counsel the certificate was received
in evidence. On cross-examination this witness was
asked: "At the time that you gave this certificate was
you aware that the chain had been catching and stop-
ping the canting gear, so that it would not be oper-
ated?" He answered: "No, sir." An objection was
interposed by defendant's counsel on the ground that
the inquiry was incompetent, irrelevant, and imma-
terial, and not proper cross-examination. Replying
thereto, the court said: "The witness has already an-
swered it." No motion was made, however, to strike
out the answer.

An exception having been taken by the defendant's
counsel to a part of the court's charges, it is contended
that an error was committed in instructing the jury
as follows:

"In this case there has been introduced written evi-
dence in the form of a factory certificate issued by the
state labor commissioner of Salem, Oregon, and the
purpose of this bit of evidence is to aid the jury, if pos-
sible, in disclosing the motives of the witness Chance
who testified. You heard his testimony, and the cer-
tificate is before you as a part of the evidence in the
case. It is a certificate to the effect that the law
known as the factory act has been complied with. The
factory act is not the law under which this action has
been brought, and the labor commissioner of the state
is not the official nor the tribunal to determine whether
or not the plaintiff has proven her case which you are
to try. That province is exclusively yours, and it be-
comes your duty, in the light of the instructions which
I am giving you as applied to the evidence in the case,
to pass upon that question; the effect and value of the

certificate of the state labor commissioner being as I have indicated.''

It is argued that the jury should have been told that the certificate afforded *prima facie* evidence of a compliance with the provisions of the act referred to, as declared therein: Section 5046, L. O. L. It does not appear from the bill of exceptions that any request was made for an instruction announcing the degree of proof which such certificate imparts, and, this being so, can it be said that the portion of the charge hereinbefore quoted was an incorrect statement of the law as applied to the facts involved? It was certainly the prerogative of the jury to determine from the evidence produced whether or not the defendant had been negligent, and, if so, whether its carelessness was the proximate cause of the injury. What the court said with respect to disclosing the motive of the witness Chance, the deputy labor commissioner, may have alluded to his lack of information as to the condition of the pulleys and the breaking of the chain, of which facts he had no knowledge when he issued the certificate. But, however this may be, the challenged instruction in its entirety appears to be a correct narration of the legal principles applicable to the testimony on this branch of the case.

2, 3. An exception was taken to the court's refusal to give the following requested instruction, and it is maintained that an error was committed in declining to charge the jury as follows:

''If in this case you should find that the defendant had not violated any statute relative to its machinery, then I instruct you that, if a servant voluntarily continues, however, without complaint or objection, after knowledge or notice of existing risks, under conditions by which he is chargeable with an appreciation of the danger, and where ordinary prudence would require

of him a different course, he is held also to take upon himself the responsibility entailed by the risk he continues to incur.''

Section 1 of the Employers' Liability Act enumerates the kinds of construction, improvement, etc., and the classes of business to which the statute relates. It also contains a clause which reads:

''And generally all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.''

Section 3 of the act puts upon the persons thus indicated the duty to see that the requirements of this statute are complied with, and for any failure in this respect such individual, when found guilty of a violation thereof, shall be fined or imprisoned, or both penalties may be imposed: Gen. Laws 1911, c. 3.

The testimony of the plaintiff's witnesses establishes the fact that before McDaniel was killed the friction pulleys of the canting gear in the defendant's mill occasionally became locked and could not be released by the lever with which they were usually controlled, because the chain leading from the spool was drawing at an angle forcing one pulley against the other and at times breaking the chain. It also appeared from such testimony that in other sawmills in Oregon, having similar canting gear, a block and sheave, iron rolls, or other mechanism was in use whereby the chain passing over such appliance was necessarily wound upon the spool in such manner as

not to force it forward or back on its spindle, thereby either locking the friction pulleys or forcing them apart, so that they would not engage, and that such attachments could have been installed in the defendant's mill with but little expense, and without diminishing the efficiency to manufacture lumber.

The instruction requested was predicated upon the theory that, if the jury "should find that the defendant had not violated any statute relative to its machinery," then they should determine that certain consequences would necessarily follow. The fault of this proposed instruction lies in the fact that it does not state any of the obligations put upon an employer by statute, thereby designing to have submitted to the jury a question of law. If the requested instruction had been free from the objection adverted to, it would have been inappropriate, for in *Schulte* v. *Pacific Paper Co.*, 67 Or. 334 (135 Pac. 527). Mr. Justice Eakin, in referring to the Employers' Liability Act, says:

"The effect of the statute is to eliminate the defense of the assumed risk in the actions within it."

See, also, *Dorn* v. *Clarke-Woodward Drug Co.*, 65 Or. 516 (133 Pac. 351). No error was committed in refusing to charge as requested.

4. The court also refused to give the following requested instruction:

"The manner in which you shall assess damages, if you assess any, must be, not what the deceased would have earned had he lived for the balance of his expectancy, but what he would have saved or probably left as an estate, as represented by his net savings, and which would have gone for the benefit of his estate; and, in ascertaining what the deceased would have saved, I instruct you that you should take into consideration his age, his ability, his disposition to

labor, his habits of living, and his expenditures, and you should base your decision upon this and nothing else, so far as damages are concerned."

An exception having been taken to the action of the court in this respect, it is insisted that an error was thereby committed. Whatever may formerly have been the rule in Oregon as to the manner of ascertaining the measure of damages sustained by the death of a person when caused by the wrongful act or neglect of another can have no application to the statute now in force. Under the prior enactments of this state the injury thus occasioned constituted a damage to the estate of the deceased for the recovery of which an action could be maintained only by his personal representatives: Section 380, L. O. L. The Employers' Liability Act gives to certain enumerated persons the damages thus sustained, thereby necessarily excluding the decedent's estate, unless there is in existence none of the relatives named, or the residence of the person entitled to the damages is in some foreign country so remote as to render it extremely difficult for him to prosecute an action, amounting almost to a denial of justice, in which case a personal representative can maintain an action under Section 380, L. O. L.: *Statts* v. *Twohy Bros. Co.*, 61 Or. 602 (123 Pac. 909). The cause herein is prosecuted by the widow of the person killed, who alone is entitled to the recovery which is unlimited in amount, and not restricted by the damages which the decedent's estate may have sustained, but is to be measured by the pecuniary loss suffered by the person entitled thereto: *McFarland* v. *Oregon Elec. Ry. Co.*, 70 Or. 27 (138 Pac. 458); *McClaugherty* v. *Rogue River Electric Co.* (Or.), 140 Pac. 64.

No error was committed in refusing to give such instruction. Other errors are assigned; but a careful examination of the entire testimony which is attached to the bill of exceptions convinces us that a proper verdict was rendered. The judgment entered thereon should be affirmed, and it is so ordered.

Affirmed.

Mr. Chief Justice McBride, Mr. Justice Burnett and Mr. Justice Ramsey concur.