Argued September 17, reversed October 7, rehearing denied December
30, 1919.

## GARVIN v. WESTERN COOPERAGE CO.

### (184 Pac. 555.)

**Master and Servant—Complaint Sufficient Without Alleging Master's Rejection of Workmen's Compensation Act.**

1. There being no presumption under the Workmen's Compensation Act as to whether the employer is subject thereto, the injured servant's complaint is not insufficient for failure to allege that defendant had elected not to come under the act, the matter being one of affirmative defense.

**Aliens—Nonresident Alien's Action for Son's Death Properly Brought by Direction of Foreign Consul.**

2. Under the treaties of the United States with Austria-Hungary, the Austrian consul-general has authority to direct an attorney to bring an action under the Employers' Liability Act on behalf of a mother who is a subject and resident of Austria for the death of her son.

**Death—Nonresident Alien may Sue Employer for Death of Son.**

3. A nonresident alien may maintain an action, under the Employers' Liability Act, for the death of her son against his employer.

**Evidence—Sufficiency to Establish Relationship.**

4. In an action by a nonresident alien for the death of her son, testimony of a relative and frequent visitor of the family that plaintiff treated decedent as her son and called him her son, and decedent treated plaintiff as his mother and had spoken of her as his mother, was competent to establish the relationship, being direct evidence thereof.

**Evidence—Written Declaration of Alien Relative Prior to Action Admissible to Show Relationship.**

5. In an action by the nonresident alien mother of deceased servant against the latter's employer, a letter written by deceased's brother in Austria to a relative in this state, made at a time when no controversy existed as to relationship of mother and son, was admissible evidence on the question of pedigree.

**Evidence—Admission of Relationship by Defendant's Attorney in Another Action Inadmissible.**

6. In an action by a nonresident alien mother for the death of her son against the latter's employer, a statement, made in argument in support of defendant's motion for nonsuit, in a cause in which this plaintiff was not a party, that it was disclosed by evidence that deceased had a mother so that his administrator could not bring action for his death, is not admissible as an admission by defendant of the relationship of mother and son.

**Witnesses — Question Establishing Affirmative Defense not Proper Cross-examination.**

7. In an action for the death of a servant by collision of a truck with an engine upon which the servant was riding, it was error for defendant to ask plaintiff's witness what kind and make the truck was, when witness had not testified as to the trucks, since such question was clearly directed toward establishing an affirmative defense and was not proper cross-examination.

**Witnesses—Inconsistent Testimony in Former Proceeding Concerning the Same Accident Admissible.**

8. In view of Section 861, L. O. L., it was proper, in an action against employer for the death of a servant, to ask a witness about his testimony at a coroner's inquest relative to same accident, for the purpose of impeachment, where there was an apparent inconsistency.

**Master and Servant—Evidence of Use of Safety Appliances Admissible to Show Practicability.**

9. In an action under the employers' liability law for death in a collision between an engine and a runaway logging-car, testimony that witness had worked for years in nearly every possible capacity in logging camps using trucks, and that on logging roads where there are grades, safety lines, safety rails, and derails are used, was competent on the question of practicability of such safety devices.

**Trial—Instruction Limiting Jury to One Item of Negligence Properly Refused.**

10. In an action under the employers' liability law for a servant's death in a collision between an engine on which he was riding and a runaway logging-car, where there was evidence of negligence in not using snubbing lines and safety switches, an instruction limiting the jury to consideration of one item of negligence, based upon a defective drift-pin, which permitted the brake to loosen, was properly refused.

**Death—Proper Measure of Damages for Son's Death.**

11. In a mother's action under the Employers' Liability Act for the death of her son, an instruction that the jury might consider, his age, life expectancy, health, ability, habits, mental and physical skill, and the amount which he would probably have saved from his earnings, *held* proper.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

This is an action wherein it is sought to recover damages for the death of one Mjo Rjacich, of whom the plaintiff claims to be the mother. The substantial facts as alleged in the complaint are that Mjo

Rjacich was a member of the section crew upon defendant's logging railroad; that at the time of the accident resulting in his death, he was riding upon one of defendant's engines; that at the same time other employees were loading a logging-car, and that after it was partially loaded, a bolt in the hand-brake attached to the car broke, thereby releasing the brake, whereupon the car "ran wild," colliding with the engine upon which Rjacich was riding, and thereby caused the injuries which resulted in his death. The alleged negligence upon which the right of recovery is based consisted in spotting the car upon a dangerous and steep grade without using the necessary methods of anchoring the car during the operation of loading it, as follows:

1. The defendant failed to provide "snubbing lines," consisting of a steel cable, one end of which is attached to the car and the other end to some stationary object, which would safely hold the car in place.

2. It neglected to safeguard the car with "safety chains," with which the car might be chained to the track.

3. It neglected to provide safety or derailing switches with which to derail a "runaway" car.

4. That the defendant, at the time of the accident, had a derailing switch installed below the grade where the car was being loaded, but it was spiked to the main line so as to be useless as safety device.

5. That it neglected to provide sound and substantial brakes on the logging-car, and failed to take measures to see that the brakes were in good working condition.

The answer, after denials, pleads affirmatively as follows:

That on or about the thirteenth day of September, 1915, defendant was and for some time prior thereto had been conducting a logging business in Clatsop County, Oregon. That in connection with said logging business defendant operated a logging railroad. That on or about the said thirteenth day of September, 1915, Mjo Rjacich was in its employ as a section-hand and at the time of his accident aforesaid he was riding on a locomotive belonging to defendant. That some distance away from the point of the accident a set of logging trucks were being loaded with logs at a logging rollway. That said trucks were practically new, and had been purchased from a reputable concern and had been manufactured by a reputable manufacturer. That the said trucks were of standard make, such as are used commonly in work of that kind, and had been properly inspected by the defendant. That each truck had a standard brake with a brake-staff which could be tightened from the side—that when tightened the said brake-staff was held in place by means of a pawl which fitted into a ratchet. That the said ratchet was attached to said brake-staff by means of a metal pin which ran through the said ratchet and said brake-staff. That while the said trucks were being loaded with logs the pin holding the ratchet attached to the forward brake-staff broke in some manner, thereby allowing the brakes to loosen from the wheels and the said trucks loaded with two logs started down the track, colliding with the trucks loaded with logs attached to the locomotive aforesaid, on which locomotive the said Mjo Rjacich was riding. That by reason of said collision the said Mjo Rjacich received injuries from which he afterward died. That the pin which broke appeared amply sufficient, and was put in place by the manufacturers. That an

inspection would not disclose any defect in said pin, and so far as this defendant knew, or could have known by the exercise of ordinary care, said pin was in good, first-class condition; and so far as defendant is concerned said accident was wholly unavoidable, accidental and unforeseen, and could not have been prevented by it through the exercise of ordinary care.

A reply having been filed, there was a trial, resulting in a verdict and judgment for plaintiff, and defendant appeals.                                     REVERSED.

For appellant there was a brief over the name of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the names of *Mr. M. H. Clark* and *Messrs. Woerndle & Haas,* with oral arguments by *Mr. Charles T. Haas* and *Mr. Clark.*

*Mr. A. P. Dodson* appearing for Alien Property Custodian.

BENSON, J.—1. The first assignment of error is that the complaint is insufficient because it fails to allege that defendant had elected not to come under the Workmen's Compensation Act. The contention thus presented has been settled adversely to defendant's theory in *Olds* v. *Olds,* 88 Or. 209 (171 Pac. 1046).

2. It is then urged that the court erred in permitting plaintiff's attorney to testify that he was authorized and requested to commence the action in behalf of plaintiff at the request of and under the direction of the Austrian consul-general. The objection to this evidence was based upon the ground that under the statute no one but the mother is entitled to bring ac-

tion, and that the consul cannot authorize the proceeding. This question also has been set at rest in the recent case of *Ljubich* v. *Western Cooperage Co.*, 93 Or. 633 (184 Pac. 551), wherein it is held that under the treaties of the United States with Austria-Hungary, the consuls of that country are, in effect, *ex-officio* attorneys in fact, with ample authority in cases like the one at bar.

3. The next assignment is that the court erred in holding that the plaintiff can maintain this action, being a nonresident alien. Although this question has been frequently discussed and passed upon in many other states, this is the first time that it has been presented for our consideration. The leading case in the United States supporting defendant's theory of the law is that of *Deni* v. *Pennsylvania R. Co.*, 181 Pa. 525 (37 Atl. 558, 59 Am. St. Rep. 676), which has been followed by a few of the other states, notably Wisconsin and Indiana, but a great majority of the states have held to the contrary. A leading case in support of plaintiff's right to maintain the action is that of *Mulhall* v. *Fallon,* 176 Mass. 266 (57 N. E. 386, 79 Am. St. Rep. 309, 54 L. R. A. 934), wherein the court, speaking by Mr. Justice HOLMES, says:

"In all cases the statute has the interest of the employees in mind. It is on their account that an action is given to the widow or next of kin. Whether the action is to be brought by them or by the administrator, the sum to be recovered is to be assessed with reference to the degree of culpability of the employer or negligent person. In other words, it is primarily a penalty for the protection of the life of a workman in this state. We cannot think that workmen were intended to be less protected if their mothers happen to live abroad, or less protected against sudden than against lingering death. In view of the very large

amount of foreign labor employed in this state, we cannot believe that so large an exception was silently left to be read in.''

In the comparatively recent case, *Anustasakas* v. *International Contract Co.,* 51 Wash. 119 (98 Pac. 93, 130 Am. St. Rep. 1089, 21 L. R. A. (N. S.) 267), the Supreme Court of Washington, in an interesting opinion, wherein are cited a large number of the cases supporting either contention, speaking by Mr. Justice RUDKIN, says:

''The plea of alienage is not favored in law, and we are of opinion that the rule which permits nonresident aliens to maintain actions of this kind is supported by the weight of authority, and is more in harmony with the liberal cosmopolitan spirit of the age than the narrow provincial rule which would close our courts to widows and orphans solely because they happen to be nonresident aliens.''

This case is also reported in 21 L. R. A. (N. S.) 267, where it is followed by an interesting note, citing practically all of the cases upon the subject.

At the conclusion of a brief and lucid discussion of the subject in 1 R. C. L. 825, is found this language:

''Since the statutes of the various states giving a right of action for negligent killing are copied from Lord Campbell's Act, the construction placed upon that act by a decision of the King's Bench in 1898 greatly influenced the courts which denied the right of action in the earlier cases; and, therefore, the disapproval of that decision in the later case before the same court but by different judges in 1901 would seem to weaken, to some extent at least, the weight of those earlier decisions of the state courts. It thus appears that the weight of authority both in England and the United States is that alienage is not a condition affecting a recovery for the death of a relative under the statutes allowing such an action.''

We therefore adopt the doctrine that a nonresident alien is not precluded from maintaining the action.

4. Error is assigned upon the action of the court in refusing to strike from the record the testimony of the witness Mike Erstich. The substance of the testimony of this witness is to the effect that his father and decedent's father were first cousins; that decedent and himself were both born at Dinovo, Austria, a village containing about three hundred houses; that their homes were separated by the distance of about fifteen minutes' walk; that they had both lived at Dinovo all of their lives, until Mjo Rjacich had come to Portland about six years before his death, to which place the witness had followed about two and a half or three years later; that he had known the plaintiff from his earliest recollection; that he had been a frequent visitor at her home, which had also been the home of the decedent all of his life until he came to Portland; that in the home at Dinovo the plaintiff had treated the deceased as her son and called him her son; and that deceased had treated plaintiff as his mother and had spoken of her as his mother. The witness also testified that the decedent had sent money to his mother, and that after decedent came to Portland and before the witness left Dinovo, he saw the mother receive money which had been sent to her by decedent. It is urged that this evidence is incompetent for the reason that there is no other evidence in the record concerning the relationship of plaintiff and decedent, and that since this evidence consists of the declarations of the plaintiff, who is beyond the jurisdiction of the court, and of Mjo Rjacich who is dead, that it belongs to that class of hearsay evidence which is admissible only when there is evidence, *dehors* the declarations, of the relationship of the declarant to

the family.  A careful analysis of this testimony shows that the witness himself is a relative; he says that he has known both declarants all of his life, that they bore the same family name, lived in the same house, conducted themselves toward each other as mother and son, and each addressed the other in a way to indicate such relationship.  It will be at once observed that here is evidence, outside of the declarations of the plaintiff and Mjo Rjacich, tending to establish the relationship, being the direct evidence of the witness Erstich.  In a very carefully considered case, *State* v. *McDonald*, 55 Or. 419 (103 Pac. 512, 104 Pac. 967, 106 Pac. 444), testimony of this nature is held to be competent, and it was not error to admit it.

5.  Our attention is then directed to the fact that the court admitted in evidence a letter purporting to have been written by Matt Rjacich (a brother of Mjo Rjacich); mailed by him at a postoffice in Austria near Dinovo, and addressed to the witness Mike Erstich, who testified that it was a reply to one written by him, and that he recognized the handwriting as that of Matt Rjacich.  The letter, as translated by the interpreter then in attendance upon the court, reads as follows:

"Dinovo, date March 1, 1916.
"My dear Matt:
"I am letting you know that we are in good health, thank God, wishing that this letter will also reach you in good health.  My dear Matt, I'm in receipt of your letter and properly understand everything what you wrote me to send a power of attorney and I'm afraid it would not be all right if we did not put all names and dates of birth of our family.  Mother was called to the Court yesterday and they want us give all names and date of birth and the Court will mail it to you.  If you had written us right away you would have got

it long ago. Dear Matt, I ask you to do everything you can in this case. Dear Matt, answer right away. You will receive the power of attorney at any time. You can tell the Court that you wrote for the power of attorney and that it did not get there yet. Dear Matt, nothing else to write, receive my sympathy from me.

"Your dear cousin,
"MATT RJACIC.

"Good-bye, awaiting your answer."

This letter was written before the present action was begun, and before there was any controversy as to the identity of Mjo Rjacich's mother, and it was offered in evidence for the purpose of showing relationship. The defendant maintains that it is incompetent as being hearsay and a self-serving declaration, made after the death of Mjo Rjacich, and therefore inadmissible. The plaintiff insists that it constitutes the declaration of a member of the family (who is out of the jurisdiction and whose declaration is therefore competent evidence) upon the question of pedigree. We are not much impressed with the probative value of the contents of the letter and in fact find nothing of value in it, but so far as it tends to establish the question of relationship, we think it is clearly competent. In *Thompson* v. *Woolf,* 8 Or. 454, this court says:

"Declarations of a deceased person or persons out of the state, who are related to a family, may be admitted to prove pedigree. But before such declaration can be admitted, the relationship of the declarant to the family must be proved by other evidence than his declarations."

Here we have the evidence of Erstich that the author of the letter is a brother of the decedent, Mjo Rjacich, and that he is out of the state, living in

Dinovo, Austria. We know of no authority which makes any distinction between a written declaration and one that is spoken.

The fact that the letter was written after the death of Mjo Rjacich does not affect the admissibility of the declaration, unless it was made after the controversy had arisen, and upon this point the rule appears to be that the evidence is properly admitted if the declaration was made at a time when no controversy existed as to the precise question in regard to which the declaration is made: 2 Wigmore on Evidence, § 1483. In the present case, the letter from Matt Rjacich was written before this action was begun, and before any question of the identity of the mother had arisen. We therefore conclude that the letter was properly admitted.

6. The next assignment of error is based upon the action of the court in permitting J. F. Wood, the official court reporter to testify from his report of the evidence in a former case, the statement of W. E. Thomas, one of the defendant's attorneys, in a motion for a nonsuit as follows:

"The defendant at this time moves for a nonsuit. This is made upon the ground that this action has not been brot by a person who is entitled to bring the action under the laws of this state, in a case of this kind. This action, the fact is, as disclosed by the evidence in this case, and as alleged in the pleadings, brings this case within the employers' liability law, clearly and unquestionably. That being the case, an administrator of an estate cannot bring an action against a defendant under the conditions existing in this case. It is disclosed by the evidence that the deceased has a mother. Under the Employers' Liability Act of 1911, Section 4, this action cannot be brot by an administrator. The question was thereupon argued at length and at the conclusion of said argument

94 Or.—32

the court sustained the motion of defendant for a nonsuit, to which action of the court, in sustaining said motion, plaintiff then and there by counsel duly excepted.''

The introduction of this portion of the record of a former action, in which the administrator sought to recover upon the same cause of action, was objected to by the defendant as irrelevant, incompetent and immaterial, and tending to prove no issue in the case. The plaintiff argues that the statement above quoted contains a formal admission that the decedent had a mother living and that, being inconsistent with defendant's attitude in the present action, the statement of its attorney is binding upon the client in this proceeding. In support of her contention, plaintiff calls our attention to certain cases which we briefly consider. The first is *Heywood* v. *Doernbecker*, 48 Or. 359 (86 Pac. 357, 87 Pac. 530). From the opinion in this case, counsel quotes the following:

"The admission of an attorney, made within the scope of his authority and during the continuance of his employment, bind his client to the same extent as a stipulation."

The effect of the language quoted is distinctly modified, however, by the next sentence which reads thus:

"This rule is not invoked to charge the plaintiff with an acknowledgment of a fact prejudicial to its interests, but as tending to show the theory of its counsel as to the basis of the second cause of action."

The next citation is *Missouri & K. Telephone Co.* v. *Vandevort*, 67 Kan. 269 (72 Pac. 771). This was a case in which the court admitted in evidence an admission of an attorney made in an opening statement to the jury in a former trial of the same case. In holding that it was properly admitted, the court says:

"In the statement was the admission of a material fact as to the action of the telephone company in the premises. From a reading of the record the admission appears to have been distinctly and formally made. In *Kindley* v. *Railroad Co.*, 47 Kan. 432 (28 Pac. 201), it was held that the court is warranted in acting on the admission of a party made in the opening statement of a case to the court and jury, and might make a final disposition of the case where such statement absolutely precluded a recovery by him."

The holding in this case appears to be opposed to the great weight of authority. In 1 Ency. of Evidence, 469, we find the rule stated thus:

"The admission to be binding must be so made as to be a part of the evidence in the case, or formally made to avoid or excuse the making of proof. Therefore, the mere admission or statement of counsel in an opening statement is not such as to amount to a binding admission.

"But there may be exceptions to this rule. Indeed, it has been held that an admission made by counsel, in the opening statement, may be conclusive of the case, and warrant a judgment without further proceeding." Citing a large number of authorities.

1 Greenleaf on Evidence, Section 186, states the rule thus:

"The admissions of attorneys of record bind their clients, in all matters relating to the progress and trial of the case; but to this end, they must be distinct and formal, or such as are termed solemn admissions; made for the express purpose of alleviating the stringency of some rule or practice, or of dispensing with the formal proof of some fact at the trial."

The next case to which our attention is called is *Oscanyan* v. *Arms Co.*, 103 U. S. 261 (26 L. Ed. 539, see, also, Rose's U. S. Notes), which was a case

wherein the attorney for plaintiff made an opening
statement which disclosed that he was seeking to re-
cover upon a contract which was corrupt, immoral
and contrary to public policy. The defendant there-
upon moved for a directed verdict, and the court
asked the attorneys for the plaintiff if they claimed
or admitted that the statements which had been made
were true, and counsel replied in the affirmative,
whereupon the motion was granted. This appears
to be a clear case of an exception to the general rule,
and properly so.

Our consideration is also invoked for a statement of
the rule found in 16 Cyc. 965, as follows:

"Relevant judicial statements made or adopted by
a party, although made without the knowledge or con-
sent of his attorney, are when received by the court,
admissible, not only in the case in which they are
made, but in any subsequent trial or proceedings con-
nected with it and in other cases in which the facts
covered thereby are relevant. * * Judicial admissions
are frequently those of counsel or attorneys of rec-
ord. When these are made in good faith, in the coun-
sel's professional capacity, for the purpose of dis-
pensing with evidence, and to that end are distinct and
formal, they bind the client, whether made before, on,
or after the trial."

In attempting to relate these authorities to the case
at bar, counsel has apparently overlooked certain
important considerations. The statement of Mr.
Thomas was made in argument in support of his
motion for a nonsuit, in another action, in which the
present plaintiff was not a party. In the case of
*Brown* v. *Oregon Lumber Co.,* 24 Or. 315 (33 Pac.
557), Mr. Chief Justice LORD says:

"A motion for a nonsuit is in the nature of a de-
murrer to the evidence; it admits not only all that

the evidence proves, but all that it tends to prove. The evidence given for the plaintiff must be taken to be true, together with every inference of fact which the jury might legally draw from it.''

In effect, then, Mr. Thomas' statement amounts to saying:

''If we admit, and for the purpose of this motion we do, that every item of evidence offered by plaintiff is true, nevertheless, plaintiff, as administrator, cannot maintain this action, because he has offered evidence to prove that the decedent has a mother living, to whom the statute gives the exclusive right of action.''

If an admission of this sort is binding upon the client in a subsequent action, properly brought, then every motion for a nonsuit becomes an admission against interest. We have been unable to find authorities which would justify such a conclusion. The admission of the statement was error.

7. It is then argued that the court erred in sustaining plaintiff's objection to the following question asked of the witness Robinson, upon cross-examination: ''Do you know what kind, what make of truck this was?'' This witness, who was superintendent of logging operations for the defendant company, had been called as a witness for the plaintiff and had been examined as to the various precautions in regard to safety of employees, but had not been examined with reference to the trucks. Plaintiff objected to the question upon the ground that it was not proper cross-examination, but was a part of defendant's direct case. It will be noted that the answer alleges that the truck was of a standard make, practically new, etc. The question was clearly directed to establishing an affirmative defense, and was not proper cross-examination.

It may also be observed that upon the defense, witnesses were permitted without objection, to describe the truck in detail.    There was no error in the ruling of the court.

8. The same witness, who had at a prior time testified at the coroner's inquest, relative to the same accident, gave some testimony which appeared to be inconsistent with his testimony at such inquest, whereupon, over the objection of defendant, counsel for plaintiff was permitted to question him as to his former statements, and, he having denied making such statements, they were read into the record, and this is assigned as error.    This assignment is fully answered by Section 861, L. O. L., and the case of *State* v. *Steeves,* 29 Or. 85 (43 Pac. 947).

9. The witness Lew McCutcheon testified that he had worked in logging camps for fifteen or sixteen years and has worked in nearly every possible capacity, and that his work had been altogether in camps using trucks.    He then testified, from his observation and experience in regard to the use of snubbing lines, safety chains, safety and derailing switches, and other safety appliances, and was then asked this question: "Would you or would you not say now that on logging roads where there are grades, safety lines are used, and safety rails and derails and the means you have described as means of safety?"

The answer of the witness was "Yes, sir."    To this question and answer the defendant objected upon the ground "that it is incompetent, irrelevant and immaterial, and no proper foundation laid, and does not prove any issue in the case, and calls for a conclusion."    It is argued that this was error, and in support of such contention our consideration is directed to the case of *Trickey* v. *Clark,* 50 Or. 526 (93 Pac.

457).  In that case the defendants called expert mill-
men who testified that the lever in use at the time of
the accident was provided with a reasonably safe and
proper lock and fastener.  This court very properly
held that such evidence was incompetent, since it was
directed to the principal issue in the case, i. e., Was it
negligence upon the part of the defendants to use the
device which they did use?  The jury had before them
a model of the device, and its workings were fully ex-
plained to them, so that they were as competent as
any expert to determine its utility.  The testimony
of McCutcheon, in the present case, stands upon a very
different footing.  The case upon which appellant re-
lies was one founded upon the common law, that an
employer must provide for his servant a reasonably
safe place to work and reasonably safe appliances.
The vital point for the jury to determine was, whether
or not the device used was reasonably safe, and no
witness could be permitted to answer that question
for them.  The present action, is based upon the em-
ployers' liability law, which requires the employer:

"To use every device, care and precaution which
it is practicable to use for the protection and safety
of life and limb, limited only by the necessity for
preserving the efficiency of the structure, machine or
other apparatus or device, and without regard to the
additional cost of suitable material or safety appli-
ance and devices."

It must be noted that the testimony of the witness
was directed to the practicability of certain safety de-
vices, and the fact that, in other places, he had seen
them in use.  In *Love* v. *Chambers Lumber Co.,* 64
Or. 129 (129 Pac. 492), we find this language:

"The complaint alleges that it was practicable for
defendant to have so guarded the machinery as to

have prevented the accident without interfering with its ordinary use. This was denied in the answer, so it became necessary for plaintiff to establish the proposition that it could be so guarded. No better evidence could have been introduced for this purpose than to show that after the accident the machinery had been so guarded, and that such safeguards had not in any way impeded or interfered with its operation.''

In *Camenzind* v. *Freeland Furniture Co.,* 89 Or. 158 (174 Pac. 139), this court held that it was proper to admit evidence of a safety appliance then in use in Switzerland, although nothing like it was known in the United States. We are therefore of the opinion that the evidence was properly admitted.

10. Defendant further assigns as error the refusal of the court to give certain requested instructions, the first of which reads thus:

''Defendant company further states that the cause of the runaway was the breaking of a drift-pin which passed through the ratchet and brake-staff; that there was a defect in this pin which the defendant company did not know or could not have known was present, and that such defect was a latent or hidden defect and that the defendant could not have known of this defect by the exercise of that degree of care which the law requires.''

This requested instruction is of value only when read in connection with the next one, and counsel for defendant very properly presents them in his argument, together. The other one reads thus:

''The defendant company was not an insurer of the safety of its car and appliances; it was required to use every degree of care and caution which it was practicable to use in carrying on its work, and if you find that his casualty resulted because of the breaking of the drift-pin through the ratchet and brake-

staff and that this pin was crystallized or had in it a hidden defect which this company did not know or could not have known by the exercise of that degree of care which the law requires, then I instruct you that the plaintiff cannot recover in this action, and your verdict must be for the defendant.''

The theory of defendant appears to be, that since an employer is not liable for hidden defects in the appliances furnished, that if he had used every care and precaution practicable in the inspection of the devices actually in use, he is absolved from all liability for injuries resulting from such latent defects. It may be that the authorities under the common law, and prior to the enactment of the Employers' Liability Act would have justified such a contention, but that statute has very greatly enlarged the legal obligations and liabilities of the employer. It declares that the employer—

''shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, without regard to the additional cost of suitable material or safety appliance or devices.''

Section 4 of the act provides for the recovery of damages for any loss of life resulting from any violation of the requirements of the law. The complaint charges negligence in not using snubbing lines, safety switches, derailing devices, etc., and there was evidence supporting such allegations. The jury, therefore, could not be limited to a consideration of the one item of negligence based upon the defective drift-pin, and the instruction was properly refused.

11. The last assignment of error is that the court refused to give the instruction requested by defendant

upon the subject of the measure of damages. The portion thereof which is contended for reads thus:

"Your verdict must be based on the pecuniary loss which the plaintiff has suffered, and in arriving at this amount, you may take into consideration the money support which the deceased, in your judgment, would have contributed to the mother during the mother's lifetime. You may consider the age of the mother, if you know her age, and ascertain the probable length of her life; you may consider whether he would have contributed to the mother in the future, and for what length of time."

Instead of this, the court gave the following instruction:

"In ascertaining such damages you may take into consideration the age of the deceased, his expectancy of life as disclosed by the evidence, his health, ability, habits of industry, mental and physical skill; if you find that any such qualities are established by the evidence, his capacity for earning money by rendering service to others, or accumulating money or property, if any, the amount which deceased would probably have saved from his earnings or by his skill or bodily labor, if any, during the expectancy of his life. That is the measure of damages."

It is conceded that this instruction, as given, is in harmony with the rule as enunciated by this court in *McClaugherty* v. *Rogue River Electric Co.,* 73 Or. 135 (140 Pac. 64, 144 Pac. 569). But it is urged that the rule thus declared is inconsistent with the doctrine of *McFarland* v. *Oregon Electric Co.,* 70 Or. 27 (138 Pac. 458, Ann. Cas. 1916B, 527), and that the latter is the more logical conclusion. We have examined both cases with care, and fail to find the inconsistency which appellant seeks to point out. In the case of *McFarland* v. *Oregon Electric Railway Co.* the court simply held that in an action under the Employers'

Liability Act, the plaintiff is not entitled to recover for the loss of the society of the deceased, for that was the specific question which was submitted. But if it were otherwise, the later case of *McClaugherty* v. *Rogue River Elec. Co.*, has met the approval of this court in *Yovovich* v. *Falls City Lumber Co.*, 76 Or. 585 (149 Pac. 941), and impresses us as most satisfactorily declaring the measure of damage in this class of cases.

For the error in admitting in evidence the statement of Mr. Thomas in arguing a motion for nonsuit in a former action, the judgment must be reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.     REHEARING DENIED.

McBRIDE, BURNETT and HARRIS, JJ., concur.