Argued September 7; affirmed November 15; rehearing denied
December 6, 1932

# NORDLUND ET AL. *v.* LEWIS & CLARK RAILROAD CO.

(15 P. (2d) 980)

*Frank C. Hesse,* of Astoria (Hesse & Franciscovich, of Astoria, Wilbur, Beckett, Howell & Oppenheimer, and Veazie & Veazie, all of Portland, on the brief), for appellant.

*Arthur I. Moulton,* of Portland (Lord & Moulton, of Portland, on the brief), for respondents.

ROSSMAN, J. Evidence favorable to the plaintiffs indicates that the defendant operates a stretch of logging railroad in Clatsop county, approximately 14 miles long. Its equipment is a locomotive and 31

sets of logging trucks. Each set consists of two trucks having four wheels each. The defendant hauls nothing except the logs cut by the LaDee Logging Company. At a curve on this railroad, 150 feet from the place identified by the witnesses as the rock crusher bridge, Nordlund was killed when the front wheels of the truck upon which he was performing his duties as a brakeman jumped from the rails and threw him and its load of logs into a ditch alongside of the tracks. The evidence described the ties at this particular place as "rotten" and "in pretty bad shape." It also indicated that "the rails had cut in on top of the ties and the spikes had worked loose and some of them was an inch or so from the flange of the rail." A witness, in referring to the spikes, testified: "I pulled some out with my fingers." Another swore that due to the decayed condition of the ties and the looseness of the spikes the rails were not held sufficiently tight to carry the logging train which was being operated over it. After the accident it was observed that the rail under the truck had partly turned over. As previously stated, Nordlund was riding upon one of the aforementioned trucks loaded with logs when its forward wheels left the rails thereby throwing the load of logs, together with Nordlund, into the adjacent ditch. One of the witnesses described the condition of this truck thus: "Truck No. 4 had a broken bunk and two sharp wheels, sharp-flanged wheels." He added that the bunk was in such condition that "the weight of the load would bring it down" and swore that when it was in that condition "it doesn't let the truck swing under the bunk on the curve" thus causing the truck to "jump the track." He also testified that the flanges of the wheels which had been worn sharp by long-

continued use would cause them to ''go over the rail much quicker than if the wheels were not sharp.'' A few days prior to this accident the employee in charge of the defendant's equipment had sent this particular truck to the repair plant so that new wheels would be installed upon it, but the truck was again placed in operation before all of the defective wheels had been replaced with proper ones.

The trial judge's instructions to the jury, after informing them that the plaintiffs predicated their claim to recovery upon charges of negligence, defined common law negligence, and then stated:

''However, in this particular case, the law holds the defendant to a little bit different rule of conduct than this term of ordinary care because the law particularly specifies certain duties to which an employer must perform for the care and protection of his employee, and a failure to comply with those statutory provisions which I will explain to you a little later on constitute negligence whether you think that a person of ordinary prudence would do the things specified in the statute or not. In other words, a failure to comply with the statute if there was such a failure on the part of the defendant, the employer would be negligent; * * * The statutes of this State make it the duty of employers having charge of or responsible for any work involving risk or danger, to use every device, care and/or precaution which is practicable to use for the protection of the life and limb of its employees, limited only by the necessity of preserving the efficiency of the work in which it is engaged and the equipment used in it and without regard to additional cost of safety devices or precautions; that is the duty which the Employers' Liability Act imposes upon employers for the protection of their employees. Your first inquiry therefore will be whether the work in which the defendant employed plaintiff involves a risk or danger, and if you find that it did, you will then proceed fur-

ther and inquire whether in carrying on its work the defendant, in respects of the particular allegations mentioned in Plaintiffs' Complaint, used the care and precaution required of it by law, that is, whether it used every device, care and precaution practicable to be used with the limitation already given you; if it failed to do so in some of the particulars mentioned in Plaintiffs' Complaint and as a direct and proximate result of such failure, John Nordlund met his death, then plaintiffs in this case are entitled to recover such damages as was caused to them by reason of his death, to be assessed by you under the rule respecting the measure of damages I shall give you later.''

◾ It will be recalled that the plaintiffs are the widow and children of the deceased. Section 49-1704 grants to the surviving widow and children of an employee, killed through the employers' violation of the provisions of the act, a right of action. It grants one to the executor or administrator of such deceased person's estate only in the event that there is left no surviving widow, husband, children, lineal heirs, mother or father, residing within the State. Section 5-703 grants a cause of action in amount not exceeding $10,000 to the personal representative of one whose death has been caused by a wrongful act. The above being the law which confers a cause of action for a life wrongfully taken, it is evident that the plaintiffs were required to bring their cause within the provisions of the Employers' Liability Act. If they were unable to do so their cause was bound to fail because they would be improper parties to an action under § 5-703.

◾◾ In criticism of the above instructions, the defendant urges that they instructed the jury that this case fell within the provisions of the Employers' Liability Act. We do not believe that these instructions are subject to that criticism. It is true that a portion of

them, if read alone, could convey the idea that the court had decided, as a matter of law, that the operation of the railroad subjected the employees to risk and danger, but if these instructions, in view of the manner in which the railroad was operated, constituted error it was invited error because the defendant requested the court to instruct the jury as follows:

"There was a duty resting upon the defendant in this action, in the operation of its railroad in all work involving risk and danger, to use every device, care and precaution practical to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the machinery or apparatus or device employed at the time and place of this accident, and in this instruction and in other instructions I will describe to you the degree of care to be used by the defendant."

This requested instruction was an admission that the act was applicable to the defendant's railroad and that whenever the operations subjected the employees to risk and danger the defendant owed a duty to use every practical safety device. Surely no one believes that a brakeman whose duties demand that he ride upon logging trucks is engaged in an employment free from risk and danger. Section 49-1815, Oregon Code 1930, being a paragraph of our Workmen's Compensation Law, provides: "The hazardous occupations to which this act is applicable are as follows: * * * (d) Logging, lumbering and shipbuilding operations; (e) Logging, street and interurban railroads not engaged in interstate commerce; * * *'' If the duties performed by a brakeman and which demand that he ride upon logging trucks do not subject him to risk and danger, then it would be difficult to conceive of any that do. Very likely a case would have to be a rare

one which would justify a court in withdrawing from the jury the issue whether the work involved sufficient danger to render applicable the act, but if an affirmance or reversal of this judgment were dependent upon a determination whether the facts could justify a court in holding as a matter of law that the deceased's work subjected him to a sufficient danger to bring him within the protection of the act, we would not hesitate to affirm the judgment; but we do not believe that the circuit court withdrew that issue from the jury. For it will be observed that the court, having defined the issues and having used the challenged words, continued: "Your first inquiry, therefore, will be whether the work in which the defendant employed plaintiff involves a risk or danger, and if you find that it did, you will then proceed further and inquire whether in carrying on its work the defendant * * * used the care and precaution required of it by law * * *." Apparently the trial judge used the portions of the instructions criticized by the defendant only as a prelude or a means of approach to the provisions of the Employers' Liability Act without intending thereby to withdraw from the jury's investigation any question of fact. We, therefore, conclude that this assignment of error is without merit.

■■ The defendant next contends that the instructions failed to discriminate between the provisions of the act which recite specific requirements with which employers must comply and the general provisions which commence with the words, "And generally all owners, contractors or subcontractors and other persons having charge of or responsibility for any work involving a risk or danger to the employees or the public shall use every device, care and precaution which it is prac-

ticable to use for the protection and safety of life and limb, limited only by  *  *  *.'' Preliminary to a disposition of this contention, we mention again the fact that the plaintiffs' evidence pointed out that at the scene of the accident the railroad ties were rotten, the spikes so loose that they could be pulled out by hand, and the flanges on the wheels of the logging truck upon which the deceased was riding were so badly worn that they gave the truck a tendency to depart from the rails. Without quoting the entire act, we express the opinion that the only portions of it, apart from the above-quoted clause, are the requirements that ''employers engaged in the operation of machinery shall see that all metal, wood  *  *  *  or other material whatever shall be carefully selected and inspected and tested so as to detect all defects  *  *  *.'' However, the defendant requested no instruction upon this subject, and the plaintiffs were entitled to the very instruction which the court gave; that is, that in all operations subjecting the employees to risk and danger it was incumbent upon the defendant to use every practicable precaution for the protection of life, limited by the necessity of preserving the efficiency of the work. Had either party requested an instruction stating the defendant's above statutory duty of testing the wood and metal, the court should have, and very likely would have, subscribed to the requested instruction. This is a case where both a portion of the act setting forth a specific duty and the general clause of the act were applicable. The defendant's brief concedes that both of these provisions were applicable. We quote from it thus: ''In other words, the allegations of negligence which were supported by any proof at all fell within the specific and the general clauses of the act.''

The specific provision of the act required seasonable testings of materials so as to detect defects, and the general clause defined what remedies must be applied for the safety of the employees. Both provisions of the law were beneficial to the plaintiffs rather than to the defendant, and since the latter failed in any manner whatever to call this omission to the attention of the trial judge, it has laid no foundation for an assignment of error. We, therefore, conclude that this contention is without merit.

■■■ The defendant next criticizes the portion of the instructions which state that the ancient defense of assumption of risk was not available in this case. It does not contend that the instruction was not an accurate statement of the law, and it is clear that the defendant cannot invoke this defense: *McDaniel v. Lebanon Lumber Co.,* 71 Or. 15 (140 P. 990) ; *Schaller v. Pacific Brick Co.,* 70 Or. 557 (139 P. 913) ; *Dorn v. Clarke-Woodward Drug Co.,* 65 Or. 516 (133 P. 351) ; *Love v. Chambers Lumber Co.,* 64 Or. 129 (129 P. 492) ; *Hill v. Saugested,* 53 Or. 178 (98 P. 524, 22 L. R. A. (N. S.) 634). The defendant argues, however, that since its answer did not allege the defense of assumption of risk the instruction was purely abstract. This case was brought under a special statute which affords to workmen rights different from those recognized by the common law and it would, therefore, seem entirely proper for the court, in the absence of special circumstances, to declare to the jury the nature, extent and limits of the rights accorded by the statute. This was especially true in view of the fact that the defendant sought to show that the deceased was an experienced brakeman and could have observed the defective condition of the logging truck. The defendant certainly intended that the jury should

make some use of this evidence, and in the absence of knowledge that the defense of assumption of risk was not available the jury might have misapplied the evidence just mentioned. The judge who presides over the trial and sees the manner in which the issues develop, whether they are mentioned in the pleadings or not, is best able to know what instructions are needed by the jury to produce a verdict in harmony with the law, and thus much must be left to his direction: Section 2-308, Oregon Code 1930, and *State v. Jennings,* 131 Or. 455 (282 P. 560). It is our opinion that the instruction informed the jury upon an issue developed by the evidence and that it was, therefore, not abstract.

◼ We come to the final contention of the defendant which presents for consideration the rule governing the measurement of damages in actions of this character. The court instructed the jury that in determining the damages the jury should consider "the age, health and physical condition of Nordlund, his habits with respect to industry and thrift, his capacity to earn money and how many years of his normal life expectancy he would be likely to continue such capacity to earn money, also considering his relationship to the plaintiffs, his obligations to provide for them and his disposition to do so as shown by the evidence, and from all of these circumstances determine what, if any, damages have been caused to plaintiffs by reason of his death." The instructions then pointed out to the jury that they should diminish the amount by reducing it to its present cash value. The defendant had requested the court to instruct the jury that "in determining the amount of the damages, you are instructed that if they are entitled to recover they are

entitled to damages according to the pecuniary loss resulting to them from the death of the deceased. The value of the decedent's life is the net amount that the decedent would have saved from his earnings * * *.'' Section 49-1704, Oregon Code 1930, being a portion of the Employers' Liability Act, provides:

"If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act * * * the surviving widow or husband and children * * * shall have a right of action without any limit as to the amount of damages which may be awarded * * *.''

The defendant insists that the holdings in *Rorvik v. North Pacific Lumber Co.,* 99 Or. 58 (190 P. 331, 195 P. 163); *Garvin v. Western Cooperage Co.,* 94 Or. 487 (184 P. 555); *Kuntz v. Emerson Hardwood Co.,* 93 Or. 565 (184 P. 253); *Yovovich v. Falls City Lumber Co.,* 76 Or. 585 (149 P. 941); *Fisher v. Portland Railway L. & P. Co.,* 74 Or. 229 (137 P. 763, 143 P. 992, 145 P. 277); *McClaugherty v. Rogue River Electric Co.,* 73 Or. 135 (140 P. 64, 144 P. 569); *McDaniel v. Lebanon Lumber Co.,* 71 Or. 15 (140 P. 990); *McFarland v. Oregon Electric Railway Co.,* 70 Or. 27 (138 P. 458, Ann. Cas. 1916B, 527), announced the rule that in measuring damages the jury must be confined to the amount that the deceased workman would have accumulated as net savings at the time of his death. We readily acknowledge that this statement finds occasional support in the aforementioned decisions. Some of the language upon which the defendant relies was employed in holding that the widow cannot recover for loss of solatium, and hence was mere dictum. In *McClaugherty v. Rogue River Electric Co.,* the court was considering the problem whether a father could recover any damages

whatever for the loss of his son of minor years who had not yet achieved an earning capacity. In all of the foregoing decisions the employer was attacking the instructions, and none had stated that the jury could take into consideration contributions by the deceased workman to the party who was the plaintiff in the action. However, we notice that in *McClaugherty v. Rogue River Electric Co.* the decision stated: ''The measure of damages under most of the statutes giving a right of recovery for the death of a person is the amount of pecuniary assistance and support which they might have reasonably expected to receive from the deceased had he lived. \* \* \* We think this statute clearly gives a right of action to the beneficiaries named therein for the value of the life of an employee lost by reason of the acts of negligence enumerated in the enactment.'' In *McDaniel v. Lebanon Lumber Co.*, this court held it was not error for the circuit court to decline to subscribe to an instruction which limited recovery to the net savings of the deceased, and pointed out that, the action being by the widow, the damages were ''not restricted by the damages which the decedent's estate may have sustained, but it is to be measured by the pecuniary loss suffered by the person entitled thereto.'' In *Stejskal v. Darrow*, 55 N. D. 606 (215 N. W. 83, 53 A. L. R. 1096), a father sought to recover damages from a physician whose malpractice had caused his daughter's death. The North Dakota statute, according to the decision, was ''almost identical with the original Death by Wrongful Act statute (Lord Campbell's Act, 9 and 10 Vict. chap. 93).'' The court held: ''Similar statutes have been enacted in all of the jurisdictions of the United States. While dissimilar in some respects the theory of all is the same. In prac-

tically every instance where the question has arisen under these statutes, it has been held that in measuring the damages that may be recovered the jury may consider the pecuniary value of services which the beneficiary under the statute might reasonably have expected from the person on account of whose death the action was brought. This construction was put upon the statute in the early English leading case of *Franklin v. South Eastern R. Co.*, 3 Hurlst. & N. 211, 157 Eng. Reprint 448, 8 Eng. Rul. Cas. 419.'' In an exhaustinve note accompanying this case in 53 A. L. R. 1102, the editor states: "It would seem quite clear from the cases that have considered the point, that damages under Lord Campbell's Act (9 and 10 Vict. chap. 93) and the American statutes are not to be given merely in reference to the loss of a legal right, but may include compensation for prospective loss of services which the decedent was under no legal obligation to render, where the evidence adduced is sufficient to justify a reasonable expectation that such services would have been rendered but for the death of the decedent." From 17 C. J., Death, p. 1328, § 199, we quote: "In an action by a wife for the death of her husband or by a child for the death of a parent, the jury in estimating the damages should consider what would be a reasonable support for the wife or child according to the circumstances in life of the husband or parent as they existed at the death, and as they might be reasonably supposed to continue in the future, in view of the character, habits, occupation and prospects in life of the deceased." In *Lake Erie & Western R. R. Co. v. Mugg,* 132 Ind. 168 (31 N. E. 564), the plaintiff who was the widow of a brakeman brought an action to recover the damages sustained when her husband

was killed through the negligence of his employer. The court, in sustaining the judgment of the lower court, held that no error was committed when the trial court received evidence of the deceased's habit of turning his wages over to his wife and permitting them to be expended for the support of the family; further, it held that the widow "was entitled to recover the damages suffered by the loss of the support and maintenance of the widow and minor children of the deceased, in addition to any prospective accumulation of property." From Sutherland, Damages (4th Ed.) § 1265, we quote: "The recovery by a widow of damages resulting to her from the death of her husband will be governed by the general rule applicable to all the beneficiaries provided for by the statute, which is the present value of her reasonable expectation of pecuniary advantage from the continuance of the life of the deceased * * *. The number and the ages of children dependent upon a widow for support are proper subjects of proof in an action by her to recover for the death of her husband. Such evidence shows her loss. During the husband's lifetime he was bound to support them." The rule is thus stated in 8 R. C. L., Death, p. 827, § 104: "The measure of damages under most of the statutes giving a right of recovery for the wrongful death of a person is the present value of the reasonable expectations of pecuniary advantage to those entitled to recover and which they have lost by his death; or, as it is sometimes expressed, it is the amount of pecuniary assistance and support which they might reasonably have expected to receive from the deceased had he lived."

It seems very clear that in an action by the widow and children of a deceased employee contributions of

support money, which the evidence tends to indicate would have been forthcoming, constitute a proper item for the jury's consideration. Any other rule would award partial damages only. A dutiful husband does not confine his contributions to his family by the medium of his will alone, but makes constant contributions of support money during the course of his life. The rule which the defendant insists upon would award nothing to the widow and children of a loving husband and father who had performed his duty to his family, if the jury believed that his generous contributions would have left nothing in the form of net savings at the time of his death; yet to the widow and children of another employee whose reluctant, niggardly contributions were forthcoming only under threat of prosecution for nonsupport would be awarded a handsome verdict if the jury estimated that his hoarding instincts would have accumulated a sizeable estate. We are clearly of the opinion that this assignment of error presents no merit.

We have considered all other contentions argued in respondent's brief, but find that they present no occasion for a reversal.

It follows from the foregoing that the judgment of the circuit court is affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.